THE PEOPLE OF THE STATE OF ILLINOIS, *ex rel.*
THE ATTORNEY GENERAL,

*v.*

EDWARD S. SALOMON.

1. CONTEMPT—*failure to obey a peremptory mandamus—attempted justification thereof.* Where facts exist at the time an alternative writ of mandamus is issued, which would render obedience to a peremptory writ impossible, it is the duty of the respondent to disclose such facts to the court in his return, in order that the court may so dispose of the case and shape its proceedings as to suit the emergencies of the case as it actually stands.

2. So where a clerk of a county court refused to extend upon the collectors' books the taxes according to the increased valuation determined by the State board of equalization, and proceedings were instituted to compel the clerk, by mandamus, to make such extension, which resulted in the award of a peremptory writ, it was *held*, in a proceeding by attachment

against the clerk for contempt, in failing to obey the writ, it was no justification of such disobedience that a compliance with the command of the writ had become impossible by reason of the collectors' books, upon which the extension was directed to be made, having been delivered to the township collectors, and the clerk could not repossess himself of them,—that fact existing at the time the alternative writ issued, and was in no way brought to the attention of the court.

3.  SAME—*and herein, of the duty of ministerial officers to obey the law, not to decide upon its validity.*   Nor was it a sufficient answer in the proceeding for contempt in failing to obey the peremptory mandamus, that the clerk had placed the books in the hands of the township collectors, and so beyond his control, whereby it had become impossible to obey the writ, such action on the part of the clerk resulting from his original refusal to obey the law itself, he assuming to decide the law under which the board of equalization acted, to be unconstitutional, and placing his refusal to obey it upon that ground.

4.  A ministerial officer can not be allowed to decide upon the validity of a law, and thus exempt himself from responsibility for disobedience to the command of a peremptory mandamus, his disobedience to the law being the cause of his inability to obey the command of the court.  It is the duty of a ministerial officer to obey an act of the legislature directing his action, not to question or decide upon its validity.

5.  SAME—*of popular clamor, as an excuse for a refusal to execute the law.*  Nor was it any justification to the clerk in such case, for his refusal to execute the law, and his consequent inability to obey the writ of mandamus, that by the action of other county officials, a public sentiment and feeling were created against the execution of the law, which it was the duty of the officer to obey, regardless of such considerations.

This was a proceeding by attachment, in the name of the people, on the relation of the attorney general, against Edward S. Salomon, for an alleged contempt, in failing to obey the command of a peremptory writ of mandamus awarded by this court in the case of *The People, on the relation of O. H. Miner, Auditor of Public Accounts,* against *Edward S. Salomon, Clerk of the County Court of Cook County,* 46 Ill. 333, directing the said Salomon, as such clerk, to extend the taxes on the collectors' books, in Cook county, according to the increased valuation fixed by the State board of equalization.

The respondent was brought before the court, upon the writ of attachment, and made answer to interrogatories propounded

to him by the attorney general, touching his alleged disobedience to the peremptory mandamus.

Mr. WASHINGTON BUSHNELL, Attorney General, for the people.

Mr. S. A. IRVIN, for the respondent.

The judgment of the Court was delivered by Mr. CHIEF JUSTICE BREESE:

*Edward S. Salomon:*

On the fourteenth of October, 1867, the Auditor of Public Accounts of this State, in obedience to law, gave you notice, under his official seal, you then being the clerk of the county court of Cook county, that the State board of equalization had raised the assessed value of property in that county for the purposes of taxation, twenty-four per cent, and that it would be your duty, as such clerk, to extend the taxes on the collectors' books, according to such increased valuation. This you declined to do, on the assumed ground that the equalization law was unconstitutional, and, at the January term, 1868, of this court, the auditor applied to this court for a mandamus commanding you to extend this tax. To the alternative writ you made a return, setting up the unconstitutionality of the law as a reason for not obeying it, but not disclosing the fact that the tax books had already been delivered by you to the township collectors. The case was heard by this court, on your return to the writ, and argued by able counsel, when, on the tenth of February, 1868, a peremptory mandamus was awarded, this court holding the equalization act to be constitutional.

At the present term of this court, the attorney general, in the performance of his duty, filed an information, giving this court to be informed that you had not obeyed the peremptory mandamus.

Upon this information, this court did not hesitate to award an attachment for this, your alleged contempt, and being brought before this court thereon, that officer filed a series of interrogatories, to which you have responded under oath.

The attorney general admits your answers to be true, and we regard them as true, for the purposes of this proceeding.

We do not deem it necessary to pronounce, in detail, upon all the items of your several answers to the interrogatories. Your answer to the second interrogatory, considered with the others, disclaiming all intentional disrespect to the mandate of this court, embody your defense to this proceeding, the substance of which answer is, that so soon as the peremptory mandamus was served upon you, on the eleventh of February, 1868, you obtained the advice of eminent counsel, the tenor of which was that you should, forthwith, demand of the several collectors a return of the tax books, then in their possession, so that you might make thereon the extension as commanded by the writ; that you ascertained, on application to the county treasurer, that the collectors of the twenty-eight towns outside of Chicago had returned their books to him; that you demanded of the treasurer the books, that you might comply with the order of this court, and that he refused to deliver the books to you, giving as a reason that the law required him to retain possession of the books for the purpose of collecting the taxes then remaining unpaid, and for making out his delinquent list, and for making application to the proper court for judgment upon it, and that he could not return the books until after the tax sale in the month of September following; that you called upon the collectors of the towns of North, South and West Chicago, informing them you had received the writ of mandamus, and demanded of them their books, for the purpose of extending upon them the additional twenty-four per cent, and that they severally refused to deliver the books to you, giving as a reason for such refusal, that the warrants attached to the books required them to collect the taxes as thereon extended, and to make return of the books to the county treasurer by the

fifteenth of May following, and also, that they had given heavy
bonds for the performance of that duty; that you suggested to
the auditor, on informing him of these facts, that as a means
of overcoming the difficulties in the way, the best course would
be to extend this additional tax on the books of 1868 as " back
tax," to which the auditor did not assent; that upon learning
this non-assent of the auditor, you proposed to the chairman
of the board of supervisors the propriety and necessity of
making out new books, extending on them this additional tax,
and that the chairman informed you that it was necessary, as
he understood the law, that he should sign the warrants
attached to such books as chairman of the board of supervi-
sors, in order to their validity, and that he would not sign
such warrants if you did make up new books, and that
thereupon you again consulted your legal adviser, and he
informed you that if the chairman of the board refused to sign
the warrants attached to the proposed new books, they would
be illegal and useless, and that he had grave doubts whether,
if the chairman should sign such warrants, they would be valid;
as he understood the command of the writ of mandamus, it
was, that the additional tax should be extended on the origi-
nal books, and therefore could not advise you to undertake the
labor and expense of so doing; that the collectors' books were
not returned to your office until the last of October or first of
November, 1868, which was some time after the tax sale, and
while you were engaged with all the force in your office in
making up the collectors' books for that year, when it was too
late under the law, and impracticable and impossible, in any
point of view, for you to extend the taxes on the books of
1867, and collect the same; that when you were engaged in
preparing the books for the collection of the taxes of 1868, you
consulted your counsel as to the propriety of extending this
additional tax on those books as " back tax," and his opinion
was that it would not be legal, and might invalidate the whole
levy of 1868, and that he was of opinion there was no other
way to collect that tax but by the enactment of a special law

by the legislature; that in pursuance of that opinion, you visited the seat of government during the session of 1869, and urged upon several of the members of the legislature from Cook county, the necessity of the passage of a special act for levying and collecting this tax, but for some reason unknown to you, such an act was not passed.

The foregoing embraces the merits of your defense to this proceeding, and which you claim purges the contempt with which you stand charged.

The substance of your return is, that you had delivered the books to the tax collectors, and could not repossess yourself of them for the purpose of extending the additional tax.

We have carefully considered this return, and in our judgment it is, as a justification, open to serious objections. The first is, that this fact existed at the time the alternative writ issued, and should have been embodied in the return to that writ, in order that the court might have disposed of the case on a full knowledge of all the facts, and have so shaped its proceedings as to suit the emergencies of the case as it then actually stood. Instead of that, you submitted the case to the court upon the theory that the books were still in your hands, or subject to your control, and thus, by your withholding the facts upon which you now rely for a justification of your alleged contempt, the court was compelled to make an order which you now say it was impossible for you to obey.

The court was not unaware that the time for the delivery of the books to the collectors had expired, but as the proceeding was solely for the purpose of compelling you to extend the tax, and you did not profess it was not in your power to do so, or that you had parted with the control of the books, the court, in making its final order, acted upon the case made by yourself and for yourself in the record.

But the main objection to the sufficiency of your answer is, that you are endeavoring to excuse your disobedience to a command of the court, by setting up your own previous disobedience to a command of the legislature. You are seeking to

escape the consequences of one wrongful act, by pleading that you have committed another not less wrongful. This species of defense is, in our judgment, forbidden you by that universal principle of law which forbids a party to avail himself of his own wrong. This maxim lies at the very foundation of jurisprudence, and is applied alike in civil and criminal proceedings. The statute required you to do a certain act. You refused to do the act, and when the agencies of the courts are set in motion by the proper officers of the State to compel you to do it, you seek to escape obedience to their commands by alleging that you had so acted as to render their power ineffective, and at the same time make yourself safe in your disobedience, by consummating your illegal act before the court had spoken.

To allow this sort of defense to be made as a justification for disobeying the peremptory writ, would be to set all law at defiance, and make the mandates of this court a by-word and a jest.

Your duty was to extend this tax on the fifteenth of October, 1867, when the books were in your possession, so that the tax might have been collected by distress, or by the sale of the real property of the delinquents. The dilemma in which you are now involved, is the consequence of your failure to do this precedent act, which would have ensured the collection of the tax at the time provided by law. It would be unjust, therefore, should you be permitted to shield yourself from responsibility in this proceeding, you yourself having created the circumstances by which you were disabled from obeying the mandamus.

The law under which this additional tax was imposed, had passed the legislature under all the forms of the constitution, and had received executive sanction, and became, by its own intrinsic force, the law to you, to every other public officer in the State, and to all the people. You assumed the responsibility of declaring the law unconstitutional, and at once determined to disregard it, to set up your own judgment as superior

to the expressed will of the legislature, asserting, in fact, an entire independence thereof. This is the first case in our judicial history, in which a ministerial officer has taken upon himself the responsibility of nullifying an act of the legislature for the better collection of the public revenue—of arresting its operation—of disobeying its behests, and placing his own judgment above legislative authority expressed in the form of law.

To the law every man owes homage, "the very least as needing its care, the greatest as not exempted from its power." To allow a ministerial officer to decide upon the validity of a law, would be subversive of the great objects and purposes of government, for if one such officer may assume infallibility, all other like officers may do the same, and thus an end be put to civil government, one of whose cardinal principles is, subjection to the laws.

Being a ministerial officer, the path of duty was plain before you. You strayed from it, and became a volunteer in the effort to arrest the law, and it was successful. Had the property owners, who were subjected to this additional tax, considered the law unconstitutional, they could, in the proper courts, have tested the question, and it was their undoubted right so to do. Your only duty was obedience. The collected will of the whole people was embodied in that law. A decent respect to them required that all their servants should obey it. Your disobedience being the cause of your inability to obey the mandamus, can not, as we have said, make a justification in this proceeding, and in full accordance with this view is the case of *The People ex rel. Dox* v. *The County Judge of Johnson Co. et al.* 12 Iowa, 237.

In coming to a conclusion in this case, our attention has been arrested by a part of your answer to the third interrogatory of the Attorney General, wherein you say that by the action of the financial committee of the board of supervisors, about the fifteenth of October, 1867, in directing you not to extend the additional tax, and by the almost unanimous direction given by

the board of supervisors, by resolution, passed at the following December session, to the same effect and purpose, a public sentiment and feeling were created against its execution that continued after the issuing of the writ of mandamus, and was very embarrassing to you.

This leaves your conduct exposed to the inference that, as a public officer, charged with the performance of an important duty, involving, in some degree, the welfare of the State, you desired to interpose the advice and determination of other county officials, who were under no responsibility whatever in the particular case, and that you would invoke an excited public opinion to justify a dereliction of duty. You certainly were not unaware that every man who obtains public office, takes it with all its responsibilities, and voluntarily comes under a pledge to the constituents that they shall be fully met and promptly discharged. No public officer should shrink from the performance of a duty imposed by law because public sentiment may be opposed to the law. To sustain a plea that he was deterred from action by an excited public opinion, would put an end to civil government. There can be no brighter exhibition of the moral sublime than a persistent performance of duty, unswayed by popular clamor, and undismayed by threats of popular vengeance. However much an angry crowd of to-day may denounce the officer, the sober, second thought of to-morrow will as loudly applaud.

Upon a calm review of the whole case as presented by the record, the law would not, in our opinion, be properly vindicated, should we pass over your official delinquency by an admonition only. We feel compelled, under a controlling sense of duty, to do something more, to omit which might operate as encouragement to others.

The court, therefore, in view of all the circumstances, have come to the conclusion, that you make your fine to the people of the State, of one thousand dollars, and it is further considered, that you stand committed until the fine and costs are paid. It is further ordered that the clerk of this court receive and

receipt for this fine, for the benefit of the treasury of the State. Had the writ of mandamus reached you while the books were in your possession, and it had been made known to this court you had refused to extend the tax upon them, we should not have hesitated to inflict upon you the severest penalty. As it is, we are satisfied we could do no less than we have done, in vindication of the law.

The duty this court has been called upon to perform has been, by no means, a pleasant duty. We have endeavored so to discharge it, that, while asserting the supremacy of the law, we have not causelessly invaded any individual right.