[No. 3062. Decided March 23, 1899.]

THE PACIFIC NATIONAL BANK OF TACOMA, *Appellant,* v. PIERCE COUNTY *et al., Respondents.*

TAXATION—NATIONAL BANKS—SHARES OF STOCK OF OTHER CORPORA-
TIONS—DOUBLE TAXATION—UNIFORMITY.

The fact that double taxation results from the method of taxing personal property, if such was the plain intent, will not invalidate the tax, unless forbidden by the constitution.

Where the statutes provide for a method of taxation upon the shares of capital stock of banking institutions, and provide further for the taxation of their real and personal property at the same rate at which other moneyed capital in the hands of citizens is assessed, a bank is not entitled to deduct from the valuation of its capital stock the value of the shares of stock held by it in other corporations located and taxed within the state, although the ownership of such other corporate stock may enter into and contribute to the value of the bank's capital stock.

The constitutional provision (art. 7, § 2) requiring a uniform and equal rate of assessment and taxation on all property in the state according to its value in money, does not prescribe uniform methods of assessment for all classes of property, but is a requirement that the rate of assessment and the method of valuation shall be uniform as to property sought to be taxed.

A national bank is not entitled to deduct, for the purposes of taxation, from the value of its capital stock, the value of stocks in

other corporations acquired by it in the course of business, although such other corporations are located within and taxed by the state, under Rev. St. U. S. § 5219, providing that taxation of such banks shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of the state, since there is no discrimination between the individual shareholder of a national bank, when taxed upon his shares as on other personal property, and the individual citizen, who is by the statute taxed upon all personal property owned by him.

(GORDON, C. J., dissents.)

Appeal from Superior Court, Pierce County.—Hon. THOMAS CARROLL, Judge.   Affirmed.

*E. M. Hayden,* for appellant:

Where a tax is laid upon the property of the corporation, whether under the name of capital or in the form of a tax upon the tangible property into which its capital has been transmuted, another tax assessed against the shareholders upon the shares held by them of the capital stock of the corporation is double taxation and not permissible. Thompson, Corporations, § 2813; *Burke v. Badlam,* 57 Cal. 594; *City National Bank v. Paducah,* 2 Flippin, 61 (1 Nat. Bank Cas. 301); *Tax Cases,* 12 Gill & J. 117; *Gordon v. Mayor,* 5 Gill, 236; *County Commissioners v. Bank,* 48 Md. 119; *Middlesex R. R. Co. v. Charlestown,* 8 Allen, 330; *American Bank v. Mumford,* 4 R. I. 478; *Smith v. Burley,* 9 N. H. 423; *Savings Bank v. Nashua,* 46 N. H. 397; Cooley, Taxation (2d ed.), p. 225; *Jones v. Davis,* 35 Ohio St. 474.

Even in the absence of constitutional prohibition double taxation, being unjust and inequitable, will never be imputed where it is possible to hold under the law that double taxation is not intended.   Thompson, Corporations, § 2814; Clark, Corporations, p. 223; Cooley, Taxation (2d ed.) p. 227; *Tennessee v. Whitworth,* 117 U. S. 137 (29 L. ed. 830).

The attempted assessment conflicts with § 5219, Rev. St. U. S.   The supreme court of the United States has de-

clared repeatedly that congress intended not only to limit the mere percentage of taxation, but to require the states to adopt such methods of assessing taxes that there should be no discrimination by which national banks would pay a larger proportion of taxes than other institutions and individual citizens. *People v. Weaver,* 100 U. S. 545 (25 L. ed. 705); *Boyer v. Boyer,* 113 U. S. 689 (28 L. ed. 1089). This ruling has been many times affirmed in other courts. *Pollard v. State,* 65 Ala. 635; *Loftin v. Citizens' National Bank,* 85 Ind. 349; *Commissioners v. National Bank,* 23 Minn. 280; *First National Bank v. Richmond,* 39 Fed. 309; *First National Bank v. Lindsay,* 45 Fed. 620; *Whitney National Bank v. Parker,* 41 Fed. 402.

*A. R. Titlow,* for respondents.

The opinion of the court was delivered by

REAVIS, J.—Appellant is a national bank, doing business in the city of Tacoma, and brought this action to enjoin the collection of the remainder claimed to be due for taxes assessed against the stock of the bank for the year 1897. The complaint states that the bank owned stocks of other corporations in the aggregate sum of $86,350, which stocks were acquired in the ordinary course of the bank's business, to prevent loss, and were of the par value of $86,350; that the other corporations in which such stock was held were located in the state of Washington; that the property of such corporations was assessed and taxed to such corporations in the year 1897; that appellant demanded a deduction of the fair cash value of such stocks held by it in other corporations from the aggregate value of the bank's shares assessed to its stockholders from the assessor and the county board of equalization, and that such deduction was refused; and that appellant also paid the amount of the tax justly due upon the assessment of its shares of capital stock, but refused to pay the balance claimed by the respondents. De-

murrers were interposed to the complaint on six grounds, only one of which, in the view taken of the case, will be considered here; that is, that the complaint does not state facts sufficient to constitute a cause of action. The demurrers to the complaint were sustained by the superior court and judgment rendered in favor of the respondents.

Appellant assigns as error the order sustaining the demurrers to the complaint and entering judgment in favor of the respondents. Counsel for appellant maintains that respondents seek to tax its stockholders upon a valuation inclusive of all the property of the bank except only real estate; that the property owned by the bank and included in the valuation of its shares to the stockholders includes the $86,350 made up of the stocks of other corporations, the property of which is located within this state and assessed and taxed here; that these facts were called to the attention of the assessor and proper complaint made to the board of equalization; that they arbitrarily and fraudulently refused to value the shares exclusive of the shares of such stocks in other corporations; and that similar stocks held by individual citizens and corporations, other than banks within the state, are not taxed.

It is contended, first, that the assessment of the bank in the method set forth is double taxation, and that, even in the absence of constitutional prohibition, such tax, being unjust and inequitable, will not be imputed, where it can be held under the law that double taxation is not intended. It is also contended that the assessment of the shares of the bank is in conflict with sections 1, 2 and 3 of article 7 of the state constitution, and in conflict with § 5219 of the Revised Statutes of the United States.

1. Judge Cooley in his work on Taxation (2d ed.), at page 219, observes:

"It has been remarked on a preceding page, that, when personal property is taxed, duplicate taxation is sometimes imposed. By this was meant that such property

sometimes, after being subjected to one levy for the support of government for the current year, is by a change of circumstances subjected to taxation a second time for the support of the government during the same period. . . . A system of indirect taxes, combined with a system of general taxation by value must often have the effect to duplicate the burden upon some species of property or upon some persons, and the taxation of stockholders in a corporation, and also of the corporation itself, must sometimes produce a like result. There is also sometimes what seems to be a double taxation of the same property to two individuals; as where the purchaser of property on credit is taxed on its full value, while the seller is taxed to the same amount on the debt. . . . Now, whether there is injustice in the taxation in every instance in which it can be shown that an individual who has been *directly* taxed his due proportion is also compelled *indirectly* to contribute, is a question we have no occasion to discuss. It is sufficient for our purposes to show that the decisions are nearly, if not quite, unanimous in holding that taxation is not invalid because of any such unequal results. It cannot be too distinctly borne in mind that any possible system of tax legislation must inevitably produce unequal and unjust results in individual instances; and if inequality in result must defeat the general law, then taxation becomes impossible."

In *West Chester Gas Co. v. Chester County,* 30 Pa. St. 232, it was said: "The power of the legislature to tax twice is as ample as to tax once;" and this is approved in *Pittsburg, etc., Ry. Co. v. Commonwealth,* 66 Pa. St. 73 (5 Am. Rep. 344). See, also, *Davidson v. New Orleans,* 96 U. S. 97. In fact, it may be said that the authorities almost uniformly state the principle that, unless forbidden by constitutional provisions double taxation does not render a tax void; and while true, as said by counsel for appellant, that the intent to levy a double tax must plainly appear and will not be assumed, yet, if such should be the result of a method of taxation of personal property, it

does not invalidate the tax. The revenue law of 1897 (§1671, Bal. Code, Laws 1897, p. 143, § 15) provides. with reference to individuals listing property for taxation:

"No person shall be required to list for taxation in his statement to the assessor any share or portion of the capital stock, or of any of the property of any company, association or corporation, which such person may hold in whole or in part, where such company, being required so to do, has listed for assessment and taxation its capital stock and property with the auditor of state, or as otherwise required under the laws of this state."

Section 1676, Bal. Code (Laws 1897, p. 147, § 20) provides how the property of corporations within the state shall be assessed. It directs the president, secretary or principal accounting officer or agent of the corporation to list the property real and personal, and that it shall be assessed and taxed the same as other real and personal property. It will thus be seen that capital stock and property of corporations situated within the state, other than state and national banks, are assessed upon their property in the same manner as is property assessed to individuals in the state. National and state banks are assessed and taxed under § 1677, Bal. Code,- (Laws 1897, p. 147, § 21) and provisions for the collection made under §§ 1678, 1679 and 1680 (Laws 1897, p. 148, §§ 22-24). Bal. Code, section 1677, reads as follows:

"All the shares of stock in banks, whether of issue or not, existing by authority of the United States or the state, and located within the state, shall be assessed to the owners thereof; . . . all such shares shall be assessed at their full aid fair value in money, . . . first deducting therefrom the proportionate part of the value of the real estate belonging to the bank, at the same rate, and no greater, than that at which other moneyed capital in the hands of citizens and subject to taxation, is by law assessed."

It would seem that this tax is intended to be, and is, an excise on the franchise of banking corporations and not on their property. It is said by the supreme court of Massachusetts, in the case of *Commonwealth v. Hamilton Mfg. Co.*, 12 Allen, 298:

"The market value of the shares of a corporation, or the aggregate market value of all the shares, by which we understand the cash price for which the shares will sell in the market, does not necessarily indicate the actual value or amount of property which a corporation may own. The price for which all the shares would sell may greatly exceed the aggregate of the corporate property, or it may fall very far short of it. Undoubtedly the amount of property belonging to a corporation is one of the considerations which enters into the market value of its shares; but such market value also embraces other essential elements. It is not made up solely by the valuation or estimate which may be put on the corporate property, but it also includes the profits and gains which have attended its operations, the prospect of its future success, the nature and extent of its corporate rights and privileges, and the skill and ability with which its business is managed. In other words, it is the estimate put on the potentiality of a corporation, on its capacity to avail itself profitably of its franchise, and on the mode in which it uses its privileges as a corporate body, which materially influences and often controls its market value. Familiar examples will illustrate this. Thus, the shares in a corporation may have a market value and sell for a high price before any of its capital stock has been paid in, or it has acquired any corporate property. In such a case, it is the estimate put on its franchise and the expectation of the benefits and advantages to be derived from it which give it a value. So there may be two corporations organized with similar powers, having the same number of shares, the same amount of property or capital, and both may be engaged in the same branch of business. The market value of the shares in one corporation may be double that of the other, because one is prosperous and likely to make large gains, while the other is unsuccessful,

and is carrying on a business which may prove unprofitable or lead to heavy losses."

In the case of *Commonwealth v. New England Slate & Tile Co.,* 13 Allen, 391, a tax was levied upon a corporation in Boston. The par value of its stock was $50 per share. The cash market value was assessed at $30. The corporation had real estate situated in the state of New York. It also owned 8,550 shares of another corporation, the property of which was listed and taxed within the state of Massachusetts. No deduction was made by the assessor on account of the shares of the stock owned in the corporation, and on which the tax had been paid, and the tax was laid on the full market value of the shares. The court sustained the tax and observed:

"The tax imposed by St. 1864, c. 208, has been decided to be an excise upon the corporate franchise, and not a property tax. *Commonwealth v. Hamilton Manuf. Co.,* 12 Allen, 298. It is not affected by the character of the investments of the corporate property, except so far as deductions are allowed by the provisions of the statute itself; and the statute does not authorize the deductions which are claimed in this case. The constitutionality of the tax is not to be determined by circumstances which are peculiar to the particular case in which the question arises. The provisions of the St. of 1864, c. 208, having been decided to be in accordance with the constitution; and the fact that the defendant corporation held property, which was subject to the burden of taxation in other ways, does not render this tax upon its franchise illegal. In the practical operation of the powers of taxation, which are given in several forms, it is inevitable that double taxation should ocur in some cases. The legislature may relieve against it by allowing deductions, if it sees fit to do so; but the court can only apply the law as it stands."

The supreme court of the United States in *Van Allen v. The Assessors,* 3 Wall., at page 583, observes, with reference to such tax:

"But, in addition to this view, the tax on the shares is not a tax on the capital of the bank. The corporation is the legal owner of all the property of the bank, real and personal; and within the powers conferred upon it by the charter, and for the purposes for which it was created, can deal with the corporate property as absolutely as a private individual can deal with his own."

The constitutional mandate (§ 2, art. 7) of the state, requires "a uniform and equal rate of assessment and taxation" on all property in the state according to its value in money, and "the legislature shall prescribe such regulations by general law as shall secure a just valuation." This requirement is not of uniform methods of assessment. The legislature must prescribe the regulations for ascertainment of the value of property, and it may provide different regulations for the assessment of different classes of property, and, if not restricted by constitutional provisions, the legislature may impose taxes on one class of property and completely exempt another class of property from taxation. In the cases of *Newport v. Mudgett*, 18 Wash. 271 (51 Pac. 466), and *Pullman State Bank v. Manring*, 18 Wash. 250 (51 Pac. 464), debts were authorized to be deducted from a share of bank stock because a deduction of such debts was authorized from all other credits owned by individuals in the state, by general law, and shares of bank stock are assessed and taxed as personal property of the individual holder of such stock, and the tax levied upon his stock was there held to be a tax upon a credit; and thus his bank stock, viewed as a credit, was entitled to be assessed, under the same privilege of deduction of his debts, as in the same class with all other credits assessed in the state. When the share of bank stock was assessed as a credit, then it fell within the class of credits, and the rule of uniformity required that the same deduction of debts be allowed upon

it as upon all other credits. And, further, to satisfy the rule of uniformity, if a portion of any class of property is exempt from taxation, the whole class of such property must be exempt. The shareholder in a state or national bank is assessed upon his stock as he is upon any other personal property which he may own. He is assessed upon such share at its fair market value, and by the same method as is all other personal property in the state. The rate of assessment and taxation is the same as upon all other personal property. The method of valuation is the same. It is true, a different regulation is made in the revenue law for the assessment of the property of some corporations owning tangible property in the state, as has been before observed, where the property, both real and personal, and the franchise are assessed together to the corporation itself; and we do not think there can be said to be any inequality here.

2.   Section 5219 of the Revised Statutes of the United States authorizes the taxation of shares of national banking associations located within the state, subject only to the restriction as to manner of the assessment, "that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state." In the case of *Van Allen v. The Assessors, supra,* it was said:

"The main and important question involved, and the one which has been argued at great length and with eminent ability, is, whether the state possesses the power to authorize the taxation of the shares of these national banks in the hands of stockholders, whose capital is wholly vested in stock and bonds of the United States."

And the court concludes that this power is possessed by the state.

In the case of *People v. Commissioners,* 4 Wall. 244, the question of the validity of a statute of the state of

New York, which authorized the taxing of bank shares where the capital of such bank was invested in United States securities exempt from taxation under the acts of Congress, and also whether a taxation of the shares of the stockholders was valid because of an alleged discrimination made in favor of other state corporations and individual citizens of the state, arose. The shares of stock in national banks were assessed to the stockholders, and with the same valuation as other personal estate. No deduction was made on account of investments by the bank in United States bonds, which were exempt from taxation. But, under the law of the state, a deduction or allowance was made upon assessments on all insurance companies and on all individuals for United States bonds owned by them. It was maintained on the part of the stockholders that there was an illegal discrimination made in favor of other state corporations and of individual citizens of the state, because such exempt securities were deducted from the assessment of individuals and insurance corporations in the state. But the assessment was held valid, the court observing:

"It is argued that the assessment upon the shares of the relator is at a greater rate than that of the personal property of individual citizens, upon the ground that allowance was made upon account of United States securities held and owned by them, when at the same time the deduction was disallowed to him. The answer is, that upon a true construction of this clause of the act, the meaning and intent of the law-makers were, that the rate of taxation of the shares should be the same, or not greater, than upon the moneyed capital of the individual citizen which is subject or liable to taxation. That is, no greater proportion or percentage of tax in the valuation of the shares should be levied than upon other moneyed taxable capital in the hands of the citizens. . . . Another objection taken is, that the taxation of the shares of the relator is illegal, on account of this deduction,—it

being a departure from the rate of assessment prescribed in the clause already stated. The answer is, that this clause does not refer to the rate of assessments upon insurance companies as a test by which to prevent discrimination against the shares; that is, confined to the rate of assessments upon moneyed capital in the hands of individual citizens. These institutions are not within the words or the contemplation of Congress; but even if they were, the answer we have already given to the deduction of these securities in the assessment of the property of individual citizens is equally applicable to them. These companies are taxed on their capital, and not on the shareholder, at the same rate as other personal property in the state. There is not much danger to be apprehended of a discriminating tax in their favor prejudicial to the rights or property of the citizen; and, of course, to the rights of the shareholders in these national banks, who stand on the same footing."

The court here also cites with approval the cases of *Van Allen v. The Assessors, supra,* to the effect that the tax on the shares is not a tax on the capital of the bank.

And again, in the case of *Davenport National Bank v. Davenport Board of Equalization,* 123 U. S. 83 (8 Sup. Ct. 73) the allegation was made that the shares of national bank stock were taxed at a rate which was in excess of the tax levied upon other moneyed capital of the state. The statute of Iowa taxed savings banks, one of which was in the same town with the national bank, on the amount of the paid-up capital of the savings bank, and did not tax the shares of its individual stockholders, while the shares of national bank stock were taxed to the individual stockholders and assessed at the same rate as other personal property. The court, by Mr. Justice MILLER, upholding the validity of the tax, observed:

"The proposition of counsel seems to be, that the capital of savings banks can be taxed by the state in no other way than by an assessment upon the shares of that capital

held by individuals, because, under the act of Congress, the capital of the national banks can only be taxed in that way.   It is strongly urged that in no other mode than by taxing the stockholders of each and all the banks can a perfect equality of taxation be obtained.   The argument is not conclusive, if the proposition were sound; for the act of Congress does not require a perfect equality of taxation between state and national banks, but only that the shares of the national banks shall not be taxed at a higher rate than other moneyed capital in the hands of individuals.   That this does not mean entire equality is evident from the fact that, if the capital of the national banks were taxed at a much lower rate than other moneyed capital in the state, the banks would have no right to complain, and the law in that respect would not violate the provisions of the act of Congress for the protection of national banks.   .   .   .   If then neither the necessary, usual or probable effect of the system of assessment discriminates in favor of the savings banks against the national banks upon the face of the statute, nor any evidence is given of the intention of the legislature to make such a discrimination, nor any proof that it works an actual and material discrimination, it is not a case for this court to hold the statute unconstitutional."

See, also, *Hepburn v. School Directors,* 23 Wall. 480; *First National Bank of Utica v. Waters,* 7 Fed. 152; *Mercantile Bank v. New York,* 121 U. S. 138 (7 Sup. Ct. 826).

Recurring to the question of inequality in the rate of assessment and taxation, it may be observed that a refined calculation will oftentimes be confusing in the assessment of different classes of property by different regulations. Thus, for an illustration, when a corporation in this state is assessed upon its capital and franchise together, should it have money in its possession, such money is listed and taxed.   The bank, as such, does not list any money or any other personal property to the assessor.   The individual citizen who has promissory notes and other credits in his

possession must list them for such assessment and taxation. No inquiry is made as to what assets the bank may own or possess other than real property. Thus, it cannot be shown that there is any inequality, merely when the different methods of assessment are stated; but certainly, as between the individual shareholder of a national bank, when taxed upon his shares as other personal property, and that of the individual citizen, who is taxed upon all personal property owned by him, there is no unjust discrimination. The appellant, the bank here, is merely the trustee and representative, for convenience, of its individual shareholders. They, for the purposes of this suit, are the real parties in interest.

And, finally, it may be observed that appellant's complaint does not show that the other corporations, the stock of which is held by appellant as aforesaid are moneyed corporations.

We therefore conclude that the judgment of the superior court is correct, and it is affirmed.

DUNBAR and ANDERS, JJ., concur.

GORDON, C. J., dissents. .