[No. 19295.  Department Two.  August 12, 1925.]

Albert MacLaren, *Respondent*, v. Ferry County *et al.*,
*Appellants.*[1]

Taxation (6, 12, 13)—Constitutional Requirements—Equality
and Uniformity—Taxation According to Value—Mines and Mining
Property.  The act of 1921, p. 401, Rem. Comp. Stat., §§ 11150 to
11159, providing for the taxation of mining property, based upon the
net profits of a mine or group of mines, is violative of §§ 1 and 2, art.
VII of the Constitution providing that all property shall be taxed
in proportion to its value in money, and requiring a uniform and
equal rate of assessment; since it unjustly discriminates in favor of
mining property, exempts portions of the property, and provides for
taxation without regard to the value.

Appeal from a judgment of the superior court for
Ferry county, Neal, J., entered December 5, 1924, in
favor of the plaintiff, upon an agreed statement of
facts, in an action to secure a reduction of taxes.  Re-
versed.

*Frank M. Allyn,* for appellants.

*Samuel Porter,* for respondent.

Tolman, C. J.—Respondent instituted this action to
secure a reduction of taxes upon certain mining claims
owned by him, located in Ferry county, alleging in his
complaint that, for the year 1923, if assessed accord-
ing to the provisions of ch. 124, Laws of 1921, p. 401,
the assessed value of the properties would have been
$3,135 only; while the county officials, in defiance of the
act of 1921, had arbitrarily, fraudulently and against
his protest, fixed the assessed valuation at the sum of
$15,000.  A tender was made of the amount which
would have been due if the assessment had been as con-
tended for; and, though issues were raised by answer,
certain admissions were made, when the case came to

[1]Reported in 238 Pac. 579.

trial, which amounted to an agreed statement of the facts, and the case was submitted to the trial court without the introduction of any evidence, purely upon the questions of law involved. The court, by its judgment, upheld the act of 1921, and the county and its treasurer have appealed.

Some minor questions are raised, but the conclusions we have reached upon the main question—that of the constitutionality of the act of 1921—make it unnecessary to consider them.

The act referred to (Rem. Comp. Stat., §§ 11150 to 11159, inclusive) [P. C. §§ 7068-1, 7068-10], provides, in its first section:

"All mines and mining claims, both placer and rock in place, containing or bearing gold, silver, copper, lead or other valuable mineral or metal deposits, which mining claims are acquired or held under the lode or placer mining laws of the United States after purchase thereof from the United States shall be taxed at the price paid the United States therefor unless the surface ground or mining claim is used for other than mining purposes and has a separate and independent value for such other purposes, in which case said surface ground or any part thereof so used for other than mining purposes shall be taxed at its value for such other purposes. Unpatented mining claims shall not be taxed, but the surface improvements thereon shall be taxed in the same manner as other improvements of like character and the net proceeds thereof shall be taxed as herein provided. All machinery used in mining and all property and surface improvements upon mines or mining claims, which have a value separate and independent of such mines or mining claims and the net annual proceeds of all mines and mining claims shall be taxed: Provided, that nothing in this act contained must be construed so as to exempt from taxation improvements, buildings, erections, structures or machinery placed upon any mining claim or used in connection therewith."

The second section defines "net profits;" the third provides for a verified annual statement from which the amount of net profits can be determined; and later in the act is a provision requiring the annual assessment to be based upon the net profits of the mine or group of mines operated as one.

It is contended that this act is violative of §§ 1 and 2, of Art. VII, of our state constitution, providing that all property shall be taxed in proportion to its value in money and requiring a uniform and equal rate of assessment to that end, in that:

(1)   It unjustly discriminates in favor of mining property in the following particulars:

(a)   By permitting un-operated properties to escape upon the payment of a mere nominal tax.

(b)   By permitting productive properties to escape upon the payment of this nominal tax together with a tax upon the annual net profit.

(c)   By exempting from taxation values of such properties for purposes, other than mining, for which the property is not actually used.

(2)   It does not provide a uniform and equal rate of taxation according to value, even of such property as may be included within the classification, because:

(a)   It provides for a fixed assessment of $5.00 per acre without regard to value.

(b)   Values for other purposes than mining are exempt, unless the property is actually used for such other purposes, making use, rather than value the measure of taxation.

(c)   The amount of annual net profits, which is not a true measure of value, is made the sole basis upon which taxes are assessed upon producing properties.

(d)   It exempts from taxation that portion of the net profits which the owner may see fit to invest in improvements on the property.

(3)   It makes an arbitrary, unreasonable and unjust classification, depending upon source of title, not upon the nature of the property.

That our constitution is peculiar in its wording and positive in its mandate, is made very clear and forcible by its language, as this court has often recognized. *Whatcom County v. Fairhaven Land Co.*, 7 Wash. 101, 34 Pac. 563;   *State ex rel. Chamberlin v. Daniel*, 17 Wash. 111, 49 Pac. 243; *Pacific National Bank of Tacoma v. Pierce County*, 20 Wash. 675, 56 Pac. 936; *State ex rel. Wolfe v. Parmenter*, 50 Wash. 164, 96 Pac. 1047, 19 L. R. A. (N. S.) 707; *State ex rel. Board of Tax Commissioners v. Cameron*, 90 Wash. 407, 156 Pac. 537; though it permits classification when that will not defeat the apparent purpose of uniformity and equality.   *Tekoa v. Reilly*, 47 Wash. 202, 91 Pac. 769, 13 L. R. A. (N. S.) 901; *Puget Sound Power & Light Co. v. Seattle*, 117 Wash. 351, 201 Pac. 449.

What is meant by the words of the constitution, "a uniform and equal rate of assessment and taxation on all property in the state, according to its value in money,  .  .  ."—cannot be other than what the words imply.

"Equality in taxation is accomplished when the burden of the tax falls equally and impartially upon all the persons and property subject to it, so that no higher rate or greater levy in proportion to value is imposed upon one person or species of property than upon others similarly situated or of like character. Uniformity requires that all taxable property shall be alike subjected to the tax, and this requirement is violated if particular kinds, species, or items of property are selected to bear the whole burden of the tax, while others, which should be equally subject to it, are left untaxed.   Further, it is implied that each tax shall be uniform throughout the taxing district involved.   A state tax must be apportioned uniformly throughout

the state, a county tax throughout the county, and a city tax throughout the city.'' 37 Cyc. 735.

And,

"A consitutional requirement that all property shall be taxed in proportion or according to its value is mandatory upon the legislature, and imposes a rule for its assessment which cannot be varied, as to such taxes as are within the application of the provision. In particular, it forbids the levy of specific taxes and requires that they shall be imposed *ad valorem*. Such a provision is also generally taken as prohibiting the commutation of taxes, in so far as that is involved in imposing a fixed charge on receipts, amount of business, or output in lieu of all taxes on property owned, and as prohibiting a classification of property and taxation of the different classes at different rates. . . .'' 37 Cyc. 760.

Also,

"As value is the only measure which can be applied indiscriminately to all the different classes of property, real and personal, to achieve uniformity and equality the valuation of property is indispensable, and property can be taxed only in accordance with its value. A specific tax on a particular class of property when other property is taxed in proportion to its value is unconstitutional. . . .'' 26 R. C. L. 244.

See, also, *Ellis v. Frazier*, 38 Ore. 462, 63 Pac. 642; *Covell v. Young,* 11 Neb. 510, 9 N. W. 694; *In re House Bill No. 270,* 9 Colo. 635, 21 Pac. 476; *Pittsburgh, Cincinnati & St. Louis R. Co. v. State,* 16 L. R. A. 380.

The constitution of the state of South Dakota seems to be very much like our own in its terms upon this subject, and in an able opinion by Judge Sanborn, of the circuit court of appeals, eighth circuit, delivered in the case of *Wells Fargo & Co. v. Johnson,* found in 214 Fed. 180, in which a very similar question was involved, it is said:

"It is conceded that the board was without either constitutional or statutory authority to tax either the gross or net earnings of the company in the state of South Dakota in lieu of all other taxes or of taxes on its property, and that the limit of its lawful power was to assess and tax its 'real and personal property according to its value in money, . . . so that every person and corporation shall pay a tax in proportion to the value of his, her, or its property,' as the Constitution requires. The value of real and personal property in money is the amount that can be realized from it by a sale of it within a reasonable time, and that is the valuation at which the local assessors were required to assess, and presumptively did assess, the property of individuals and of the vast majority of the taxpayers in the state of South Dakota. Counsel argue that the assessors of such property are not prohibited from considering the earning power of that property for the purpose of ascertaining its actual value. But this contention is fallacious and irrelevant in this case. In the first place, while such assessors may and doubtless do consider the rental value, and in that sense the earning power, of some kinds of real and personal property, it is common knowledge that the customary and lawful measure of the value of such property which they use is the selling value of the property; and, in the second place, it was not the earning power of plaintiffs' property in South Dakota that the board considered as a measure of its value, but the earnings of the plaintiffs themselves, the earnings of the owners of the property.

"The first question in this case, therefore, is whether or not taxation at a uniform rate, at the rate of 28 mills on the dollar in this case, of the real and personal property of one taxpayer on a valuation measured by its selling value in money and of the real and personal property of another taxpayer on a valuation measured by the earnings of the owner of the property, as well as by its selling value, is equal and uniform taxation of the real and personal property of both, so that each 'person and corporation shall pay a tax in proportion to the value of his, her or its property,' as the Consti-

tution requires. This question seems susceptible of but one answer; it seems impossible that such assessments could produce equal and uniform taxation according to the value in money of the property assessed. . . ."

Respondent seems to recognize the fact that cases from courts in those states, where the constitution appears to have been framed to permit this system of taxation of mines, are of no help, and in this class fall the later Colorado cases: *Foster v. Hart Consol. Mining Co.,* 52 Colo. 459, 122 Pac. 48; *Paxson v. Cresson Consol. Gold Mining & Mill. Co.,* 56 Colo. 206, 139 Pac. 531; and *Tallon v. Vindicator Consol. Gold Mining Co.,* 59 Colo. 316, 149 Pac. 108.

Likewise, it seems to us, those cases, based upon constitutional provisions greatly differing from our own, are of little help, and in this class may be placed *In re Skelton Lead Zinc Co.'s Gross Production Tax for 1919,* 81 Okl. 134, 197 Pac. 495; *Shaffer v. Carter,* 252 U. S. 37; *Heisler v. Thomas Colliery Co.,* 260 U. S. 245; and *Oliver Iron Mining Co. v. Lord,* 262 U. S. 172; if, indeed, in these cases the constitutional question is at all involved.

Respondent's main reliance seems to be upon the decision of the Federal district court for the district of Idaho in *Hanley v. Federal Mining & Smelting Co.,* 235 Fed. 769, where the Idaho constitution was involved. The wording and history of the Idaho constitution, as there analyzed, seem to clearly distinguish it from our own, so much so as to make this case wholly inapplicable here and render further comment thereon unnecessary.

We are convinced that chapter 124, Laws of 1921, p. 401, is unconstitutional in many, if not most of the

particulars pointed out by the appellants, as hereinbefore indicated, and the judgment of the trial court is reversed with directions to dismiss the action.

FULLERTON, HOLCOMB, MACKINTOSH, and MITCHELL, JJ., concur.