[No. 24988. *En Banc.* March 16, 1934.]

THE STATE OF WASHINGTON, *Appellant,* v. R. A. WILEY, *as County Assessor for Grays Harbor County, et al., Respondents.*[1]

[1]Reported in 30 P. (2d) 958.

*The Attorney General* and *R. G. Sharpe, Assistant,* for appellant.

*E. E. Boner,* for respondents.

BLAKE, J.—The basic facts in this case are identical with the facts in the case of *State ex rel. Showalter v. Cook,* 175 Wash. 364, 27 P. (2d) 1075.

Defendant Wiley is assessor of Grays Harbor county. Pursuant to Rem. Rev. Stat., § 11220, he forwarded to the state board of equalization an abstract of the assessment roll for Grays Harbor county, which showed the assessed valuation of all the property in the county to be $23,483,853. The state board of equalization found this to be only forty-one per cent of the true and fair valuation of the taxable property in the county. Accordingly, the state board of equalization, for state purposes, raised the assessed valuation to $28,638,845, which it declared and found to be fifty per cent of the true and fair valuation of such property. In due course, the state auditor certified the valuation as found by the state board of equalization to defendant Wiley, to be extended on the tax rolls as provided in Rem. Rev. Stat., § 11224. This, the defendant Wiley declined to do. This action in mandamus was brought to compel him to perform that duty.

We here come to the point of divergence between this case and the case of *State ex rel. Showalter v. Cook, supra.* Here, the defendant Wiley filed an affidavit in response to the alternative writ of mandate, to the effect that, after a careful study and survey of taxable property values in Grays Harbor county, he

had fixed the assessed valuation of such property at $23,483,853; that such amount was, in fact, fifty per cent of the true and fair value of such property; that the state board of equalization, without any investigation whatever and without adequate knowledge, had, for state purposes, raised the assessed valuation to $28,638,845; that such amount was, in fact, seventy-three per cent of the true and fair value of such property; that the state board of equalization, in so raising the assessed valuation of such property, acted arbitrarily and capriciously and without authority in law.

Bowes, a taxpayer, was permitted to intervene. He filed an affidavit of similar import.

Plaintiff interposed demurrers to the affidavits. The demurrers being overruled and the plaintiff declining to plead further, a judgment of dismissal was entered. Plaintiff appeals.

The power and authority of the state board of equalization to fix valuations for state purposes different than those fixed by county assessors is no longer open to question. *State ex rel. Showalter v. Cook, supra; State ex rel. Thompson v. Nichols,* 29 Wash. 159, 69 Pac. 771. The question here presented is whether a county assessor can challenge the exercise of that power. Put another way: Can a public officer, charged with the performance of a ministerial duty, refuse to perform that duty on the ground that a superior officer, under whose direction he is required to act, has proceeded arbitrarily, capriciously and on a fundamentally wrong basis? There is practical unanimity of authority that he cannot. *People ex rel. v. Pitcher,* 61 Colo. 149, 156 Pac. 812, Ann. Cas. 1918D, 1185; *Inhabitants, etc. v. Clark,* 33 Me. 482; *People v. Halsey,* 37 N. Y. 344; *People v. Salomon,* 54 Ill. 39;

*Territory ex rel. Taylor v. Caffrey,* 8 Okla. 193, 57 Pac. 204; *Taylor v. State ex rel. Collins,* 121 Miss. 771, 83 So. 810.

In the case of *Inhabitants, etc., v. Clark, supra,* a tax collector had declined to proceed under a warrant issued by the county treasurer on the ground that he had been "advised and believes that the assessment was illegal." The court said:

"The treasurer has the power to issue such a warrant, and in some cases it becomes his duty. The collector, having a warrant from competent authority, was bound to proceed under it. With the anterior proceedings he had no concern. An officer appointed to collect the public revenue must, *ex necessitate rei,* obey his warrant, and he will be protected in so doing. He holds in his hands the sinews of government, and neither his fears that individuals may be injured, nor his doubts about the validity of anterior proceedings, will excuse him. If individuals are injured they have their remedy at law, or they may see fit to waive any injury they have received. The collector has no judicial power. He is only to know whether his warrant proceeds from competent authority. If so, he must fulfill it as he is commanded."

In *People v. Salomon, supra,* the defendant was charged with contempt for refusing to comply with a writ of mandate directing him to extend on the tax rolls of Cook county valuations as *raised* by the state board of equalization. The court, addressing defendant directly, said:

"The law under which this additional tax was imposed, had passed the legislature under all the forms of the constitution, and had received executive sanction, and became, by its own intrinsic force, the law to you, to every other public officer in the State, and to all the people. You assumed the responsibility of declaring the law unconstitutional, and at once determined to disregard it, to set up your own judgment

as superior to the expressed will of the legislature, asserting, in fact, an entire independence thereof. This is the first case in our judicial history, in which a ministerial officer has taken upon himself the responsibility of nullifying an act of the legislature for the better collection of the public revenue—of arresting its operation—of disobeying its behests, and placing his own judgment above legislative authority expressed in the form of law.

"To the law every man owes homage, 'the very least as needing its care, the greatest as not exempted from its power.' To allow a ministerial officer to decide upon the validity of a law, would be subversive of the great objects and purposes of government, for if one such officer may assume infallibility, all other like officers may do the same, and thus an end be put to civil government, one of whose cardinal principles is, subjection to the laws.

"Being a ministerial officer, the path of duty was plain before you. You strayed from it, and became a volunteer in the effort to arrest the law, and it was successful. Had the property owners, who were subjected to this additional tax, considered the law unconstitutional, they could, in the proper courts, have tested the question, and it was their undoubted right so to do. Your only duty was obedience. The collected will of the whole people was embodied in that law. A decent respect to them required that all their servants should obey it."

The case of *People v. Pitcher, supra,* is indistinguishable in its essential facts from the case at bar. In that case, as in this, the action was for mandamus. There, as here, the state board of equalization had raised the valuations as fixed by the county assessor. There, as here, the county assessor resisted, on the ground that the valuations fixed by the state board "were made arbitrarily, capriciously and unlawfully, and as a matter of guess or chance, and without the exercise of any method or system whatever." Denying the assessor had any right to question the values

as fixed by the state board of equalization, the court said:

"If it be true (as held by the court in overruling the demurrer) that the State Board of Equalization has the power to 'raise or lower the valuation of any part or parcel whatsoever of the property of any county,' then when duly convened for the purpose of such duty, at the time and place appointed by the law for that purpose, it enters an order fixing the values, that order is necessarily conclusive in a collateral proceeding such as this, unless something appears on the face of such order disclosing its invalidity. The Board of Equalization when so acting is a *quasi* court invested by the constitution with the duty to ascertain and determine certain facts, and its determination thereof is a judgment. In mandamus proceedings to enforce that judgment against a ministerial officer, whose duty to obey it is imposed by law, no inquiry into its regularity can be permitted. . . .

"After respondent had completed his assessment and submitted his assessment roll to the County Board of Equalization, . . . and transmitted his abstract of assessment to the Colorado Tax Commission, . . . his *quasi* judicial functions were ended, and his duties thereafter to be performed were purely ministerial, and that which is subsequently done by other boards, with jurisdiction to act in the premises, cannot be changed or questioned by him. . . .

"Indeed, the rule seems universal that 'when mandamus is resorted to in order to compel the assessment or collection of taxes the respondent may defend upon the ground of satisfaction, impossibility, or want of jurisdiction. But it is not a good return to plead irregularities in prior proceedings, another remedy, or a custom not authorized by law.' 13 Encyc. of Plead. & Prac., p. 743.

"It is the imperative duty of a ministerial officer to obey the act of a tribunal invested with authority in the premises directing his action; not to question or decide upon its validity. This applies with the same force whether the direction be embodied in a

legislative act or in the pronouncement of a governmental agency invested with power in the premises. The maxim lies at the very foundation of jurisprudence, and without its observance government would cease to exist. . . .

" 'The reasons for this rule are apparent. Public policy and public necessity require prompt and efficient action from such officers, and when intrusted with the assessment of taxes and the collection and disbursement of revenue, they had no right to refuse to perform ministerial duties prescribed by law because of any apprehension on their part that others may be injuriously affected by it, or that the statute prescribing such duties may be unconstitutional.' . . .

"The respondent herein has no more interest in that which some other tribunal did within its jurisdiction relating to the matter of fixing values for the purposes of taxation than the treasurer. The treasurer, upon receiving a warrant from the proper authorities to collect the taxes, is under the necessity of rendering obedience thereto and may not question the regularity of the proceedings resulting in the warrant. It is equally true that if the State Board of Equalization had jurisdiction, as held by the trial court, and actually made the raise it did, its judgment constituted a warrant which the respondent was bound to obey. . . .

"So here, the duties of respondent in relation to the matters in question are ministerial and if the facts upon which he is to act were properly certified to him from a tribunal with jurisdiction in the premises, that order constitutes his warrant and he is bound to proceed under it. His only concern is to know whether 'his warrant proceeds from competent authority,' and, if so, fulfill it as he is commanded. If he may interpose the defense herein relied upon, every other assessor, dissatisfied with the action and direction of the State Board of Equalization, may do likewise. Is it possible that each of the assessors in this state can be permitted, against instructions from a constitutional tribunal having state wide jurisdiction in the matter, to decide for himself whether he will obey

those instructions? If this be so, what would or could be the remedy by which the proper subjects of taxation could be listed and valued in accordance with the constitutional mandate that taxation shall be equal and uniform? If the assessors are the sole judges, and may defy the instructions of their superiors, it would depend upon the judgment or caprice, it might be, of each assessor what property he would list and value, and that which he would refuse to assess; and if one assessor were removed or indicted it would have no effect upon the others; or it might be that no one would take the trouble to see whether he was doing his duty, and the property would escape its just share of the burdens of government, the revenues be diminished and thereby the affairs of the public detrimentally affected or suspended. There would and could be no uniformity or equality in taxation under such a system. If each of the assessors is permitted to decide for himself what property shall be taxed and what exempted, what values shall be placed thereon, and defy the instructions of the State Board of Equalization in the discharge of duties imposed upon it by the Constitution, upon the alleged ground that it reached its conclusion without proper evidence, there is not only a failure to have taxation equal and uniform throughout the state, but as said in *State v. Buchanan, supra* [24 W. Va. 362]; 'such a course if upheld and justified . . . tends directly, not only to insubordination, and the destruction of good government, but to anarchy and confusion'."

In face of this overwhelming weight of authority against him, respondent Wiley seeks to justify his conduct on the authority of *MacLaren v. Ferry County,* 135 Wash. 517, 238 Pac. 579, and *State ex rel. State Tax Commission v. Redd,* 166 Wash. 132, 6 P. (2d) 619. Neither of these cases touch the problem here involved, namely, the refusal of a public officer to perform a purely ministerial duty. In the *MacLaren* case, the action of the assessor was sustained in relation to what is described in *People v. Pitcher, supra,*

as his *quasi judicial* function of fixing valuations. In the *Redd* case, we simply held that chapter 106, Laws of 1931, p. 306, Rem. Rev. Stat., § 11301 *et seq.*, was unconstitutional in so far as it attempted to empower the state tax commission to reassess, for purposes of *local taxation,* property within a county, city, town or other municipal corporation. To that extent, the act was held to be in contravention of article XI, § 12, of the constitution. The power of the state board of equalization to fix valuations for *state purposes* was not there involved. As we have pointed out, that power is established. *State ex rel. Showalter v. Cook,* *supra.* Directions under that power to the county assessor to extend the raised valuations on the tax rolls "proceeds from competent authority." His duty is to proceed as directed. He has no alternative under Rem. Rev. Stat., § 11224.

The respondent Bowes seeks to sustain his position here under authority of the case of *Denny v. Wooster,* 175 Wash. 272, 27 P. (2d) 328. That case is clearly distinguishable from the case at bar. While the action there was nominally against the assessor, its real purpose was to have eliminated from the budgets of King county and the city of Seattle certain items alleged to have been illegally included. No question of valuation placed on the taxpayer's property was involved. The taxpayer can have no interest in the valuation placed on any property but his own. No doubt, in a proper proceeding, he may contest the valuation placed upon his own property for state purposes by the state board of equalization, if he deems that valuation to exceed fifty per cent of its true and fair value.

The demurrers to the affidavits should have been sustained. The judgment is therefore reversed.

BEALS, C. J., MILLARD, MAIN, STEINERT, and MITCHELL, JJ., concur.

GERAGHTY, J., concurs in the result.

TOLMAN, J., dissents.

HOLCOMB, J. (dissenting)—To begin with, I do not accept the statement of the majority that the basic facts in this case are identical with the facts in the case of *State ex rel. Showalter v. Cook,* 175 Wash. 364, 27 P. (2d) 1075.

It is clear that the state tax commission, as the state board of equalization, conceived from the decision in the *Showalter* case that it had *carte blanche* authority to raise the assessed valuations in all the counties in the state without inspection, information or knowledge, but simply from choice or supposed necessity as arbitrarily determined by it.

The decision by the majority, by its mere fiat, makes the county assessors mere figureheads in the assessment of property for taxation purposes. They are much more than ministerial officers under our statutes. Under Rem. Rev. Stat., § 11140, it is their sworn duty to list and assess all property in their counties, requiring each person whose property is listed to make oath to the correctness of the list and the valuations therein, upon which the assessors determine the value of the property and enter fifty per cent of the same in the assessment books opposite the name of the party assessed as the taxable value. Great latitude has always been granted by the courts in the assessment of property by the county assessors, as presumptively honest and correct.

The answering affidavits of the assessor and the affidavit of the intervener, having been demurred to by appellant, must be considered as true. The state

board, having had no evidence nor knowledge of the subject matter, manifestly acted arbitrarily and capriciously. *Doty Lumber & Shingle Co. v. Lewis County,* 60 Wash. 428, 111 Pac. 562, Ann. Cas. 1912B, 870.

The cases cited from outside jurisdictions announce a rule which is contrary to the practice and procedure which has been consistently followed in this state until now. This is a question of procedure rather than of substantive law.

In *MacLaren v. Ferry County,* 135 Wash. 517, 238 Pac. 579, we upheld the county assessor in disregarding and refusing to follow an act of the legislature which commanded him to do that which was forbidden by the constitution. In *State ex rel. State Tax Commission v. Redd,* 166 Wash. 132, 6 P. (2d) 619, we upheld the county treasurer-assessor in his refusal to enter upon the assessment roll a valuation certified to him by the state tax commission because that body had no power or right to fix such a valuation. The same is true of the *Showalter* case, *supra,* so much relied upon. We there recognized the right of the county assessor to challenge the action of the state board of equalization and contest the suit brought to enforce the order of the state board. In *Denny v. Wooster,* 175 Wash. 272, 27 P. (2d) 328, we recognized the right of a taxpayer to bring and maintain such an action. In the case at bar, we have an intervening taxpayer challenging the action of the board.

In the *Showalter* case, *supra,* the undervaluation having been strangely admitted by the assessor, or some one on his behalf, there was nothing but a question of law to decide. In the case before us, there is an issue of fact.

The case of *People ex rel. v. Pitcher,* 61 Colo. 149,

156 Pac. 812, Ann. Cas. 1918D, 1185, shows in its first head-note that:

"While a valuation of property for purposes of taxation in a capricious or arbitrary way, through chance and guess, and without exercising any judgment, may and should, in the absence of waiver of such irregularities, be set aside, it can be done only in an appropriate proceeding, and not collaterally in mandamus to enforce the order of such taxing officials." [Syllabus, 156 Pac. 812.]

So that it clearly appears in that case that the court recognized that such arbitrary and capricious action on the part of the taxing authority should be set aside in an appropriate proceeding, but that the court differed from our long established rule.

The lengthy quotation of language by the supreme court of Illinois in *People ex rel. Attorney General v. Salomon,* 54 Ill. 39, is nothing but the *ipse dixit* of the author of that opinion, which was addressed from the bench to the defendant, there present to receive judgment. It was evidently intended to awe the local officer. An examination of the case, however, discloses that the judgment was pronounced in January, 1870, by that court and was based upon a previous judgment in January, 1868, by the same court, adjudging Salomon, who was county clerk and *ex officio* clerk of the board of supervisors of Cook county in that state, guilty of contempt of that court, for disobedience of its mandate. That decision was reported in *(People ex rel. Miner v. Salomon)* 46 Ill. 333.

It appears from that decision that the local officer, who was manifestly purely a ministerial officer, whose duty it was to extend the tax-rolls as equalized by the county and state boards of equalization under a law which had been enacted by the legislature in 1867, refused to do so. Salomon contended that the law was

unconstitutional, and that he was justified in disregarding it. That question was presented to the supreme court, which assumed jurisdiction upon his challenge, and determined it adversely to Salomon, just as was done in the *Ferry County* case, *supra,* except that, in that case, the law was held unconstitutional. Hence, the law of 1867 having been determined to be valid, a peremptory mandamus was directed by the court in the first case, which Salomon disobeyed. The result reached in the second case by that court was a correct result under the former decision, because of the local officer's manifest disobedience to the peremptory writ. Under the same circumstances, this court would, justly, do the same thing.

The other cases from Mississippi, Maine, New York and Oklahoma, are no more in point under their varying statutes and different modes of procedure from those obtaining here.

To compel the assessor to extend the rolls upon the basis of the state board's arbitrary finding, would be to compel him to admit that he had acted illegally and wrongfully and in plain violation of the mandatory provisions of the law governing such assessments. Where the facts upon which the application for mandamus rests are in dispute, the writ does not lie, but only in the case where the facts are conceded and merely a question of law is involved. *Bardsley v. Sternberg,* 17 Wash. 243, 245, 49 Pac. 499.

Another deplorable result of this decision will be that only in sporadic instances where certain taxpayers are watchful enough and financially able to initiate litigation will relief ever be obtained from such arbitrary action by the state boards, and all other ordinary taxpayers will be practically remediless.

For these reasons, I dissent.