[No. 15835. Department Two. September 1, 1920.]

THE STATE OF WASHINGTON on the Relation of W. E. Stanger, Respondent, v. ELMER H. BARTLETT et al., Appellants.[1]

TAXATION (6) — SPECIAL ASSESSMENTS — BENEFITS TO PROPERTY. The levying of special assessments on lands for benefits conferred, as an exercise of the taxing power, does not violate the constitutional requirements as to uniformity of levy or equality of taxation; but they must correspond in theory at least with the benefits conferred.

CONSTITUTIONAL LAW (43)—POLICE POWER—DESTRUCTION OF ANIMAL PESTS. Laws of 1919, p. 425, § 1, providing for the creation of pest districts by the board of county commissioners on petition of taxpayers of the county, for the purpose of exterminating animals destroying crops, is constitutional as being within the police power of the state.

[1]Reported in 192 Pac. 945.

AGRICULTURE — DESTRUCTION OF ANIMAL PESTS — ASSESSMENTS — CLASSIFICATION OF LAND—STATUTES—CONSTRUCTION. Laws of 1919, p. 425, § 7, providing for the levying of an assessment against lands benefited by the creation of a pest district and that the board of county commissioners "may classify the lands into tillable, grazing, and waste lands and fix the assessment for each class in such amount as shall seem just," etc., and that the finding by the board of special benefits shall be conclusive, will be construed as requiring classification of the lands as a prerequisite to the adoption of that method of raising the required revenue, instead of the levying of an annual tax as provided in the first paragraph of the section; the word "may," as used in the section, having a mandatory meaning and equivalent to the word "shall."

SAME. The fact that classification of the land would, in certain instances, be a physical impossibility is a question of no concern to the court, since it cannot be presumed that the legislature in providing therefor did a useless thing.

FULLERTON, J., dissents.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered February 13, 1920, in favor of the plaintiff, upon sustaining a demurrer to the answer, in an action to enjoin the levy and collection of a tax. Affirmed.

*Joseph B. Lindsley* and *Fred J. Cunningham*, for appellants.

HOLCOMB, C. J.—Section 1, Ch. 152, Laws of 1919, p. 425 ("An Act relating to the destruction or extermination of rodents and other animal pests detrimental to the agricultural interests in any community, providing a fund therefor, the creation of pest districts, and the levying of taxes or assessments thereon"), provides:

"For the purpose of destroying or exterminating squirrels, prairie dogs, gophers, moles or other rodents, . . . or any predatory animals that destroy or interfere with the crops, . . . or other agricultural plants or products, . . . or to prevent the introduction, propagation, growth or increase in num-

ber of any of the above described animals, or rodents, the board of county commissioners of any county may create a pest district or pest districts within such county . . ."

Other sections provide means for accomplishing the purpose of the act as generally expressed in the title.

Certain taxpayers of Spokane county, about four hundred in number, on August 23, 1919, petitioned the county commissioners for the formation into a pest district, in accordance with the provisions of the act, of all land in the county outside the corporate limits of incorporated cities and towns. Notice of a hearing on this petition was given, as required by the act, to the freeholders of the county; and at the hearing thereafter held, the county commissioners passed a resolution under which the pest district was created and designated as pest district No. 1 for Spokane county, Washington. It appearing to the county commissioners that the destruction of such animal pests as the act contemplated would be of special benefit to the lands within the district, and that such special benefit would be reasonably worth ten cents an acre to such lands, regardless of whether tillable, grazing or waste lands, the commissioners, in order to raise funds with which to carry out the purposes of the act, by resolution, assessed the lands lying within the district and provided for the collection of the assessment, as follows:

"That against each and every acre and fraction thereof of land included in such pest district there shall be specially assessed an assessment of ten cents.

"That the county assessor and county treasurer of Spokane county be and they hereby are authorized and instructed to levy and collect such assessment against such lands in the manner provided by law."

Thereafter, on October 6, 1919, the tax was levied upon the lands included in the district as formed. On

November 20, 1919, W. E. Stanger, the owner of 1,100 acres of timber land, valued at about five dollars an acre, lying within the district, sought to enjoin the assessor and the treasurer of Spokane county from collecting the assessment, contending that the assessment was illegal because the commissioners failed to classify the lands lying within the district, but assessed all lands, irrespective of valuation and benefits to be derived from the destruction of pests, at the same rate; and also contending that the act itself was unconstitutional on account of its having no provision for the taxing of property within a district *in proportion to its value and at a uniform and equal rate of assessment*. The county officials demurred generally to the complaint. The demurrer was overruled and defendants answered, setting up certain affirmative defenses which alleged, in substance:

That the complete extermination of the pests and a systematic plan of destruction over the entire county were necessary; that the classifying of all lands as tillable, grazing and waste, was impracticable; that wide publicity was given the petition and hearing, and neither plaintiff nor any other person appeared to object to the formation of the district or ask to have his lands excluded therefrom; that the county had expended money in the preparation of assessment rolls; and that plaintiff was estopped to question the legality of the establishment of the pest district and the special assessment levied therefor.

To these affirmative defenses plaintiff demurred on the ground that they did not state facts sufficient to constitute a defense. The court sustained the demurrer. Thereupon, defendants electing to stand upon their pleadings and refusing to plead further, judgment was entered restraining the assessor from extending or certifying the tax rolls showing the levy, and restrain-

ing the treasurer from collecting the tax. From this judgment, those officials have appealed.

Respondent has filed no brief and made no appearance in this court.

Appellants make a number of assignments of error, but state that they all relate to, and may be discussed under, two questions; one as to the power of the commissioners to levy an assessment at a uniform rate against all lands in the district; and the other as to the constitutionality of an act of the legislature providing for special assessments disregarding the valuation of the property assessed.

We have uniformly sustained the power to levy special assessments upon land, as an exercise of the taxing power, whenever there were any special benefits involved; but always upon the theory that the benefits conferred equaled the special assessments or special taxes levied. Under such theory there is no violation of our constitutional requirements as to uniformity of levy or equality of taxation. But they must correspond, in theory at least, with the special benefits conferred or they are invalid.

We are not persuaded that there is any necessity for any extended discussion as to the constitutionality of this act. The police power of the state extends to remedy such mischiefs here sought to be remedied and is ample to delegate such powers to the counties, as political subdivisions of the state, or other local authorities. *Wedemeyer v. Crouch,* 68 Wash. 14, 122 Pac. 366, 43 L. R. A. (N. S.) 1090; *Northern Pac. R. Co. v. Adams County,* 78 Wash. 53, 138 Pac. 307, 51 L. R. A. (N. S.) 274.

The interpretation of § 7 of the act presents no difficulties. In fact, such a task can hardly be said to confront us; for the language of the section is so clear and unequivocal that the intention of its framers is

readily gathered from a reading of it. The first paragraph is as follows:

"For the purposes herein specified the board of county commissioners shall annually levy on all the taxable property within any district a tax for such district not to exceed five mills on the dollar to be levied and collected as in this act prescribed."

It will be seen at once that, by this single paragraph of the section, it is provided that the county commissioners may, if they so elect, raise this revenue by a general tax on all the taxable property within the district. Complete provision is made by this paragraph for one method of securing the funds necessary to undertake the destruction of pests in the district.

The other method of raising this money—and the one here adopted by the commissioners—is provided by the remaining paragraph of § 7 in the following language:

"If, however, they shall deem that the prevention, destruction or extermination of any such animals, or other pests shall be of special benefit to the lands within any such district they may in lieu of a tax, levy an assessment against the lands therein at not to exceed ten cents per acre. For this purpose they may classify the lands into tillable, grazing, and waste lands and fix the assessment for each class in such amount as shall seem just, but which shall be uniform per acre in its respective class. The finding by the board of such special benefits, when so declared by resolution and spread upon the minutes of the board shall be conclusive that the same is of special benefit to the lands within the district."

If the county commissioners deem that the lands within the district shall be specially benefited by the prevention or destruction of the animals considered as pests, they are alternatively authorized by the first sentence of this paragraph to levy special assessments

against such lands not exceeding ten cents per acre. The next sentence reads:

"For this purpose they may classify the lands into tillable, grazing, and waste lands and fix the assessments for each class in such amount as shall seem just, but which shall be uniform per acre in its respective class."

Resort need not be had to any rules of guidance to determine that the word "may," in the connection here used, has a mandatory meaning and is equivalent to "shall." In other words, classification of the lands by the commissioners, as by the statute directed, is a prerequisite to the adoption of the method of raising the required revenue by means of special assessment.

The third and concluding sentence of this second paragraph of the section provides that the finding by the commissioners of such special benefits shall be conclusive.

There is a suggestion by counsel for appellants that, in providing that lands might be classified for the purposes of assessment, the legislature must have had in mind something practical, but that, if the county commissioners found the lands included in the district should be assessed for special benefits, such finding would be conclusive. As already pointed out, the legislature undoubtedly intended that, if the county commissioners chose to adopt the alternative method of taxation by special assessment, they must comply with the provision of the statute for classification of the land. The finding of special benefits would then be conclusive.

It is earnestly insisted by appellants that, in the instant case, classification would be a physical impossibility. That is obviously an aspect of the question with which we have no concern; and, as already suggested, it cannot be presumed that the legislature, when

it made provision for the classification of lands included in the district created, did a useless thing.

From the foregoing observations, it follows that the judgment of the trial court should be, and it is, affirmed.

BRIDGES, TOLMAN, and MOUNT, JJ., concur.

FULLERTON, J., dissents.