[Nos. 23478-23479. *En Banc.* January 2, 1932.]

THE STATE OF WASHINGTON, *on the Relation of the State Tax Commission et al., Respondent,* v. E. F. REDD, *as County Treasurer of Franklin County, Appellant.*[1]

[1]Reported in 6 P. (2d) 619.

*C. M. O'Brien,* for appellant.

*The Attorney General* and *John A. Homer, Assistant,* for respondents.

MILLARD, J.—Two tracts of land in Franklin county, owned by an incompetent person, were assessed for the years 1922 to 1927, inclusive, by the local county assessor, and the taxes extended and entered on the rolls in the usual manner. All of the taxes levied against the two tracts were paid under protest by the landowner. Alleging excessive valuation of the lands by the local assessor, the landowner's guardian instituted two separate actions against Franklin county for the refund of the protested taxes. One of the actions has not yet been brought to trial. The trial of the other cause resulted in judgment in favor of the plaintiff for the recovery of that portion of the amount paid which the court found to be excessive. The appeal by the county from that judgment is pending.

Subsequent to the entry of the judgment in the second action, the state tax commission, as prescribed by statute (Ch. 106, Laws of 1931, p. 306) reassessed for taxation purposes the lands involved in both actions. In accordance with its determination, the commission entered an order and certified a copy thereof to the treasurer-assessor of Franklin county, a county of the class in which the office of county assessor was abolished and the duties of that office were transferred to the county treasurer. Rem. 1927 Sup., § 4200-4.

The tax commission found the valuation for taxation purposes of the land involved in the action not yet tried in the superior court to be an amount in excess of that claimed by the taxpayer as correct, but less than the figure fixed by the local assessor. The commission determined the assessed valuation of the land involved in the action which went to judgment to be an amount less than that fixed by the county assessor, more than the amount claimed by the taxpayer to be the correct valuation, and in excess of the valuation found by the court.

The treasurer-assessor refused to enter upon the assessment roll the valuation found by the tax commission, and declined to use that valuation as a basis for the computing and extending of a tax against the lands. Thereupon, the commission commenced two separate actions in the superior court for Franklin county for a writ of mandate requiring the treasurer-assessor of that county to comply with the commission's order. The appeals (the two cases have been consolidated on appeal) are from the judgments directing the issuance of a writ of mandate in each action, rendered upon the treasurer-assessor's refusal to plead further after his demurrer to each application for a writ was overruled.

Appellant insists that the reassessment act, in so far

as its provisions affect the assessment and collection of taxes within Franklin county for county purposes, is in violation of the following sections of the state constitution:

"The legislature shall have no power to impose taxes upon counties, cities, towns, or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may by general laws vest in the corporate authorities thereof the power to assess and collect taxes for such purposes." Const., Art. XI, § 12.

"For all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes, and such taxes shall be uniform in respect to persons and property within the jurisdiction of the body levying the same." Const., Art. VII, § 9.

"The legislature, by general and uniform laws, shall provide for the election in the several counties of boards of county commissioners, sheriffs, county clerks, treasurers, prosecuting attorneys, and other county, township, or precinct and district officers, as public convenience may require, and shall prescribe their duties and fix their term of office." Const., Art. XI, § 5.

Respondent contends that no legal objection can be advanced to the exercise by the legislature of the power to authorize the taxing authorities to reassess property for taxation purposes, either upon complaint of a taxpayer or upon the taxing official's own initiative; that a statute purporting to prohibit the taxing officials or courts from correcting errors in assessments would be void.

Appellant argues that the constitutional inhibition extends to reassessment of municipal taxes by a state board or authorities other than the local corporate authorities, not to reassessment of state taxes by the state tax commission; that, in bestowing upon the tax commission, in the selection of the members of which

the people of Franklin county have no voice, the power to revise or reassess taxes imposed for county purposes, the legislature violated the constitutional provision (Const., Art. XI, § 5) under which the right of self-government is secured to the counties, cities and other municipal corporations of the state.

Laws of 1931, p. 307, § 2, reading as follows, authorizes the state tax commission to reassess property, not only for state purposes, but also for county, city and other municipal purposes:

"Whenever it shall appear to the tax commission from any protest accompanying the payment of taxes heretofore or hereafter filed with any county or state board or officer, or petition or complaint heretofore or hereafter served or filed in any court for or on behalf of such taxpayer and an investigation of the facts upon which such protest, petition or complaint is based that any error in taxation has occurred in the assessment or taxation heretofore or hereafter made of any property taxable in this state, and such assessment appears to be excessive or void in whole or in part, such property shall forthwith, in the manner provided in this act, be relisted, revalued, reassessed and retaxed for the year or years in the assessment and taxation of which such error or errors in taxation was or were made: *Provided, however,* that there shall not be more than one reassessment and/or retaxation proceedings under the provisions of this act, relating to the same property for the same year's taxes."

Section 3 of the reassessment act provides that, at a time to be fixed in the notice served upon the owner of the land, the tax commission will, at its office in Olympia, proceed to reassess and retax

" . . . said property for the particular year or years involved (naming them) and further giving notice that said owner or other interested person may appear at the time and place set forth in said notice, and show cause, if any there be, why such reassessment and retaxation should not be made, . . ."

■ We agree, as held in *Aachen & Munich Fire Ins. Co. v. City of Omaha,* 72 Neb. 518, 101 N. W. 3, that,

"In the absence of constitutional restraints, the power of the legislature over taxation is as unlimited as the subject with which it deals."

While the legislative branch of the government has the exclusive power of taxation, it may delegate that power to counties, cities or other municipal corporations. The constitutional provision that the legislature shall have no power to impose taxes upon counties or upon the inhabitants or property thereof, for county purposes, but may by general laws vest in the county authorities the power to assess and collect taxes for county purposes, is a limitation of, not a grant of power. When a municipal corporation is created, the power of taxation is vested in such corporation as an essential attribute for all the purposes of its existence, unless its exercise be in express terms prohibited.

"The position that the power of taxation belongs exclusively to the legislative branch of the government, no one will controvert. Under our system it is lodged nowhere else. But it is a power that may be delegated by the legislature to municipal corporations, which are merely instrumentalities of the State for the better administration of the government in matters of local concern. When such a corporation is created, the power of taxation is vested in it as an essential attribute, for all the purposes of its existence, unless its exercise be in express terms prohibited. . . . A municipality without the power of taxation would be a body without life, incapable of acting, and serving no useful purpose." *United States v. New Orleans,* 98 U. S. 381.

The legislature is divested by Art. XI, § 12, of the state constitution of the power to impose taxes upon counties or upon the inhabitants or property thereof

for county purposes. The section further provides that the legislature "may by general laws vest in the corporate authorities thereof the power to assess and collect taxes for such [county and municipal] purposes."

We will agree *arguendo* that, in the absence of statutory authority therefor, the local authorities of a county or municipal corporation could not assess and collect taxes for local purposes. Let us next assume the absence of a self-executing provision of the constitution conferring the power upon counties and municipal corporations to assess and collect taxes for local purposes. Would it not follow that the legislature could withhold, grant, or discontinue the power at its pleasure?

Under the first part of the constitutional provision (Art. XI, § 12), the legislature is shorn of its power to impose taxes for county purposes. What then? How could the county exist without funds, and without the power to raise funds to meet its necessary expenses? If it were not for the second part of the constitutional provision, investing the legislature with a portion of the power of which it had been divested, it is clear that the legislature could not delegate a power it did not have. If the legislature were without power to impose taxes for county purposes, plainly it could not delegate the power to any person, board or corporation.

By the second part of Art. XI, § 12, of the constitution, it is provided that the legislature may, by general laws, vest in the corporate authorities of counties, cities, and other municipal corporations, authority to assess and collect taxes for local purposes. Pursuant thereto, the legislature delegated to the counties, cities, and other municipal corporations, power to levy taxes by their local officers for local purposes. The only re-

striction upon the county's or municipality's power of taxation is that the taxes shall be imposed for public purposes only, limited to a certain rate or amount, assessed on the basis of the value of the property to be ascertained in proceedings in which the taxpayer's constitutional rights are protected, etc.

The constitutional provision is a limitation upon the power of the legislature to delegate the right of local taxation to any other than the local authorities of the county, city, town or other municipal corporation concerned.

"The constitution declares the rule of uniformity and equality of taxation; it fixes the standard of valuation by which that rule shall be preserved and enforced; it provides for the selection of an officer for each county to perform the duties of assessing persons and property. It is silent as to details, leaving to the legislature the power and duty of formulating the scheme of taxation, subject to the restrictions imposed by the general provisions it does contain.

"Unquestionably, the constitution contemplates and requires an assessment of property as a condition of its taxation. Assessment is the listing and valuation of property liable to taxation according to law. It is essential for the apportionment of all *ad valorem* taxes. Cooley on Taxation, 259. And an assessment can only be made by the officer designated by law to make it." *State v. Tonella,* 70 Miss. 701, 710, 14 South. 17, 22 L. R. A. 346.

It is not within the power of the legislature to take from the people of counties, cities, and other municipal corporations, the right of local self-government secured to them by our constitution. True, the constitution is not a grant, but a limitation upon the legislative power, and the legislature may legislate upon any subject not inhibited by the constitution. However, the constitution has limited the power of the legislature as stated above.

The taxation provision of the Kentucky constitution is much like ours. With reference to the delegation to municipal corporations of the power to tax for local purposes, the court said, in *Campbell County v. Newport,* 174 Ky. 712, 193 S. W. 1, L. R. A. 1917D 791:

"As illustrating the extent to which the constitution has committed to local political subdivisions the right to control for themselves the amount of tax they would levy and the purpose to which the funds so raised should be devoted, reference may be had to section 181a of the constitution, providing, in part: 'The General Assembly shall not impose taxes for the purpose of any county, city, town or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect taxes.' Under this section even the General Assembly is denied the right to impose taxes for the purposes of any local subdivision, and this being so, it is obvious that the General Assembly could not delegate to another and smaller political subdivision a greater power than was possessed by itself. The legislature under section 181a may exercise the authority expressly granted and confer on counties, cities, towns and other municipal corporations the power to assess and collect taxes for themselves, but it cannot delegate to one municipality or taxing district the power to tax another or confer on one political subdivision the authority to lay any kind of a burden upon another, unless the municipality or taxing district so burdened is a part of the territory in which the larger subdivision may levy a uniform tax."

In holding that the constitutional provision that the corporate authorities may be vested with the power to assess and collect taxes for corporate purposes was designed as a limitation upon the power of the legislature to grant the right of corporate or local taxation to any other persons than the corporate or local authorities, the court said, in *Harward v. St. Clair Drain Co.,* 51 Ill. 130:

"The 5th section of the 9th article of our Constitution, provides that 'the corporate authorities of counties, townships, school districts, cities, towns and villages, may be vested with power to assess and collect taxes for corporate purposes; such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same.' . . .

"It is evident, then, this clause was not inserted in the present constitution as a necessary grant of power, or to remove a doubt as to its existence. It is therefore a just inference that its purpose was to define the class of persons to whom the right of taxation might be granted, and the purposes for which it might be exercised, and when the legislature seeks to grant it to any other than corporate authorities, or for corporate purposes, it transgresses the limit of its power. If the clause in question was not designed as a limitation of power, no reason can be given why it was inserted in the constitution at all.

"Our second reason for holding it a limitation is, because of the intrinsic wisdom of the clause when thus construed. While the clause, viewed as a grant of power, would have been a mere waste of words in an instrument whose framers must necessarily have sought to avoid a single superfluous expression, if viewed as a limitation, it commands the cordial approval of our reason, as a judicious safeguard of private rights.

"The power of taxation is, of all the powers of government, the one most liable to abuse, even when exercised by the direct representatives of the people, and if committed to persons who may exercise it over others without reference to their consent, the certainty of its abuse would be simply a question of time. . . .

"As the object of this constitutional clause was to prevent the legislature from granting the power of local taxation to persons over whom the population to be taxed could exercise no control, it is evident that, by the phrase 'corporate authorities,' must be understood those municipal officers who are either directly elected by such population, or appointed in some mode to which they have given their assent."

To the same effect is 19 R. C. L., p. 945, § 245.

In *People ex rel. Town of Pelham v. Village of Pelham,* 215 N. Y. 374, 109 N. E. 513, it was held under the home rule provision of the New York constitution —a provision like Art. XI, § 5, of our constitution— that a statute which deprives incorporated villages of their rights to assess and collect taxes for village purposes was void. The act is described in the syllabus as follows:

" . . . a new and complete scheme for the assessment and collection of taxes within each town in Westchester county, provides that there shall be but one board of assessors in and for each town who shall make and prepare all assessment rolls for the purpose of taxation within the town, whether for state, county, town, village or any tax district purpose; that a receiver of taxes shall be elected or appointed in each town whose duty it shall be 'to collect all state, county, town, village, school and district taxes and assessments levied or assessed upon any taxable property within said town for the state, county, town, incorporated villages or any tax districts or part thereof therein,' and the only duty left to the officers of incorporated villages in relation to the assessment and collection of taxes for village purposes is that the board of trustees of such villages may fix and determine the amount of the annual tax of each village."

The court said:

"It is claimed that the act in so far as its provisions affect the assessment and collection of taxes within the incorporated villages of Westchester county for village purposes, is in violation of section 2 of article 10 of the Constitution of the State. In this section it is provided that 'All city, town and village officers, whose election or appointment is not provided for by this Constitution, shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof, as the Legislature shall designate for that purpose. All other officers, whose election or appointment is not provided for by this Constitution, and all officers, whose

offices may hereafter be created by law, shall be elected by the people, or appointed, as the Legislature may direct.'

"Embodied in this section is the home rule principle under which the right of self-government is secured to the localities of the state. It includes those rights of self-government which relate to the assessment and collection of taxes for village purposes which the villages enjoyed prior to the adoption of the present Constitution. Taxation for such a local purpose is the concern of the village rather than the town, county and state of which the village is an authorized subdivision. Within this limited local sphere the right to control the assessment and taxation of property for village purposes is a right which the village enjoys by virtue of the home rule provision of the Constitution. It is not merely a privilege which the village is permitted to exercise by the courtesy of the legislature. The legislature has the power to 'provide for the organization of cities and incorporated villages, and to restrict their power of taxation, assessment, borrowing money, contracting debts, and loaning their credit, so as to prevent abuses in assessments and in contracting debt by such municipal corporations' (Art. XII, section 1 of the Constitution), but it cannot take away those local rights of self-government which the municipal corporation enjoyed when the present Constitution was adopted.

"In *Rathbone v. Wirth* (150 N. Y. [1896] 459, 468) Judge Gray said: 'It ought not to require much of argument to show the importance of this clause in our Constitution, or what its presence means for our political institutions. Its very presence in the Constitution of the State since 1846 evidences the importance which the people attach to the preservation of this right in the management of their local affairs. It means the right to choose their local officers, in all its reality; or it means nothing. If it does not mean that the people have reserved the right of administering existing local offices by officers of their own choosing, whether it be done, directly, through an election, or indirectly, through the method of an appointment by some of their local authorities, I am at a loss to under-

stand its significance, or in what consists its peculiar value.' In the same case (p. 487) Judge O'Brien said: 'The true interpretation, scope and meaning of this section of the Constitution has been frequently passed upon by this court, and it has been uniformly held that its obvious purpose was to secure to the people of the cities, towns and villages of the state the right to have the local offices administered by officers selected by themselves. It was designed to protect and give force and effect to the principle of local self-government which has always been regarded as fundamental in our political institutions, and to be the very essence of every republican form of government. The local government, even in the smallest division of the state, is the preparatory school in which the citizen acquires the rudiments of self-government, and hence these institutions have been justly regarded as the nurseries of civil liberty.' . . . 

"Local functions, however, cannot be transferred to a state officer. The legislature has the power to regulate, increase or diminish the duties of the local officer, but it has been steadfastly held that this power is subject to the limitation that no essential or exclusive function belonging to the office can be transferred to an officer appointed by central authority. The office may go, but the function must be exercised locally if exercised at all. While no arbitrary line is drawn to separate the powers of local and state officers, the integrity of the local office is protected, with its original and inherent functions unimpaired. It is interference, whether direct or indirect, with the vital, intrinsic and inseparable functions of the office as thus defined and understood that the Constitution prohibits."

The cases at bar do not involve the question of the power under the constitution of the legislature to classify the subjects of taxation to the end that taxation be equal and uniform throughout the state, and that all property be taxed in proportion to its value. The power to tax for corporate purposes has been, as stated above, delegated to counties, cities and other municipal corporations. That delegation of the sover-

eign power of taxation for local purposes is absolute and complete, subject only to the constitutional restrictions that taxes shall be imposed for public purposes only, levied and collected by local officers only, limited to a certain rate or amount, levied and collected only under general laws, etc.

To secure uniformity in taxation, as our constitution requires, it is essential that the valuation of the subjects upon which the tax is levied be uniform. To accomplish this purpose, boards of equalization have been provided, one object of which is to so equalize assessments that no one part of a taxing district will be required to pay more than its proportionate share of a tax.

"Equalization of assessments has, for its general purpose, to bring the assessments of different parts of a taxing district to the same relative standard, so that no one of the parts may be compelled to pay a disproportionate part of the tax. To accomplish this purpose assessment rolls are equalized by county courts, boards of supervisors or commissioners, *and the aggregate of the county assessments by a state board* established for the purpose. *This is not done by changing individual assessments,* but by fixing the aggregate sums for the several districts at what, in the opinion of the board, they should be, so that general taxes may be levied according to this determination instead of on the assessor's footings." 1 Cooley on Taxation (3d ed.), p. 784. (Italics ours.)

Chapter 130, Laws of 1925, Ex. Ses., p. 227 (Rem. 1927 Sup., §§ 11097-1 *et seq.*), prescribes the method which the boards (county and state) of equalization shall adopt in equalizing property values within the counties and between the several counties. Section 68 (Rem. 1927 Sup., § 11097-68) provides, among other things, that the county commissioners shall form a board for the equalization of the assessments of the property of the county, and requires the county asses-

sor, after correction of the assessment rolls in accordance with the changes made by the county board of equalization, to forward one copy of the record of corrected values to the state board of equalization, which consists of the members of the state tax commission.

The state board of equalization is required to meet annually and

" . . . examine and compare the returns of the assessment of the property in the several counties of the state, and the assessment of the property of railroad and telegraph companies, and proceed to equalize the same, so that each county in the state shall pay its due and just proportion of the taxes for state purposes for such assessment year, according to the ratio the valuation of the property in each county bears to the total valuation of all property in the state.

"First. They shall classify all property, real and personal, and *shall raise and lower the valuation of any class of property in any county* to a value that shall be equal and uniform, so far as possible, in every part of the state, for the purpose of ascertaining the just amount of tax due from each county for state purposes.
. . .

"The state board of equalization shall levy the state taxes authorized by law. . . ." (Italics ours.) Rem. 1927 Sup., § 11097-70.

The powers of each board (county and state) of equalization are defined and limited. The authority of the one board is essentially different from the authority of the other. The language throughout the statute reflects the legislative recognition of the home-rule principle, the right secured by the constitution to counties, towns, cities, and other municipal corporations, to govern themselves in the matter of assessing taxes for local purposes, and in the matter of revising or equalizing the taxes imposed upon property within the counties, towns, cities, and other municipal corporations. The authority of each board of equaliza-

tion within its own sphere is supreme. As the court said in *People v. Ames,* 27 Colo. 126, 60 Pac. 346:

"In order, then, that the two boards may work harmoniously, the action of one not interfere with the other, and the authority of each, within its own proper sphere be supreme, it must necessarily follow that the state board, in equalizing and adjusting values, must deal with the respective valuations as returned by the county assessors as entireties, by making such changes in each county valuation, as a whole, as will relatively equalize the entire property values in the different counties, so that the burden of supporting the state government shall rest proportionately upon each.

. . .

"The question with which the state board deals is not whether certain kinds and classes of property in a given county have been assessed too high or too low, but whether the aggregate valuation of the property in that county as compared with the aggregate valuation of property in other counties is too high or too low; it has nothing to do with equalizing valuations between individuals, or between different kinds or classes of property in any county. That is a matter left with the county board. If it has not performed its duty in this respect, the state board cannot revise its action, but must presume that it has adjusted the valuations within the county on a uniform scale."

[3] Manifestly, the legislature not possessing such power, the state tax commission (an agency created by the legislature) can not legally assess property within the limits of a county for county purposes. It follows that the state tax commission is likewise without authority to reassess such property for the same purpose.

If the local authorities only, as we hold, have the power to list and value property within the county for local taxation purposes, no other authorities can legally relist and revalue that property for local taxation purposes.

"The word 'assessment,' as used in the decisions and statutes, has various meanings. Properly speaking it does not include the levy of taxes although sometimes the words 'assess,' 'assessed,' or 'assessment' are used in a statute as including both the levy and the assessment. An assessment, strictly speaking, is an official estimate of the sums which are to constitute the basis of an apportionment of a tax between the individual subjects of taxation within the district. . . . As the word is more commonly employed, an assessment consists in the two processes of listing the persons, property, etc., to be taxed, and of estimating the sums which are to be the guide in an apportionment of the tax between them. . . . Assessment proper includes valuation but valuation alone is not the assessment but instead only its most important element." 3 Cooley on Taxation (4th ed.), § 1044, p. 2114.

We held in *Klickitat Warehouse Co. v. Klickitat County,* 42 Wash. 299, 84 Pac. 860, that the word "assessment," as used in the statute (Laws of 1903, p. 73) making the lien for personal property taxes attach upon the assessment of the same, instead of in the following year, refers to the act of the assessor in placing his valuation on property listed with him.

The constitution of Florida provides that "cities and towns shall make their own assessments for municipal purposes upon the property within their limits." As to the meaning of the word "assessments," as used in the constitution, the supreme court said, in *Town of Auburndale v. Cline,* 82 Fla. 121, 89 South. 427:

"The word 'Assessments' as used in this clause of the constitution is not limited in meaning to the apportioning of the tax to be levied to the taxable property, but has the double significance of listing and valuing the property for the purpose of apportioning a tax upon it according to valuation, as well as determining

the amount of money to be raised by exercise of the taxing power. . . .

"The word 'assessments' as used in the clause of the constitution to which reference is made means the official listing of property for the purpose of constituting a basis upon which taxes for municipal purposes are to be levied. The power to make such assessments contemplates such method as will secure a just valuation of property assessed, to the end that the taxes imposed shall be distributed on just principles applicable alike to all for whose benefit they are laid.

"That under this construction of the language of the constitution the state may through its agency for state and county purposes place one valuation upon property and through its agency for municipal purposes place another valuation on the same property is no reason for holding that the construction is wrong and that cities and towns were not given the power because what is desired to be accomplished is a uniform and equal rate of taxation which is not rendered impossible when for state and county purposes the valuation of a property is one thing and for municipal purposes another, provided that in both cases a just valuation is made securing an equal and uniform apportionment of taxes for the different purposes."

That the word "assess" and the word "assessment," as used in the state constitution, were intended to include the valuation of taxable property, we are clear. The word "assessment" appears in § 6, Art. VIII, of our constitution. By that section, counties, cities or other municipal corporations are forbidden from incurring indebtedness in excess of a certain percentage

". . . of the taxable property in such county, city, town, school district, or other municipal corporation, . . . to be ascertained by the last assessment for state and county purposes previous to the incurring of such indebtedness, except that in incorporated cities the assessment shall be taken from the last assessment for city purposes. . . ."

Plainly, the word "assessment" conveys no other meaning than that incorporated cities were to value property for purposes of local taxation.

"The rule is, therefore, that the same meaning will be given to the same words occurring in different parts of the same constitution, unless it appears from the whole that a different meaning was intended in some part alleged to be an exception." 12 C. J. 706.

*State ex rel. Stanger v. Bartlett,* 112 Wash. 299, 192 Pac. 945, is not in point. The act there in question provided for the creation of pest districts, and the levying of special assessments on lands within the districts for benefits conferred, by the board of county commissioners for the purpose of exterminating animals destroying crops. We held the statute was constitutional under the police power, which extended to remedy such mischiefs

". . . here sought to be remedied and is ample to delegate such powers to the counties, as political subdivisions of the state, or other local authorities."

*Owings v. Olympia,* 88 Wash. 289, 152 Pac. 1019, is not applicable. We there held that, where a municipal corporation has done an act beyond its statutory powers, but within the powers competent for the legislature to have conferred upon it, the act may be validated by a curative statute. The city of Olympia, by its corporate authorities, levied a tax which was in excess of the city's authority when the tax was imposed; that is, the levy exceeded the statutory limitation of ten mills upon the dollar. Trial of the taxpayer's action for refund of the excess paid under protest resulted in judgment in favor of the taxpayer. After the city's appeal from that judgment had been perfected and was pending in this court, the legislature passed a curative act validating the imposition made by the city.

We held that the act was not in contravention of Art. XI, § 12, of our constitution, which provides that the legislature shall have no power to impose taxes upon cities for city purposes, but may by general laws vest in the corporate authorities thereof the power to assess and collect taxes for such purposes. We said the curative statute was a validating act, and nothing more; that the act did not in form purport to impose a tax upon cities of the class (third class) of Olympia; and that,

"It is plain that it does not do in substance, because the act does not impose any tax upon cities of the third class where such cities themselves had imposed none. In this case the city of Olympia, by its corporate authorities, had already imposed or levied the tax. It is true the levy was in excess of authority in the city when it was imposed; but this validating act is not an act which imposes a tax, but is an act which validates an imposition which has already been made by the city itself. . . .

"Under the constitutional provision above quoted, while the legislature is prohibited from imposing taxes upon cities, it is granted the right by general laws, to vest in cities the power to assess and collect taxes for city purposes. There can be no doubt, therefore, that the legislature had the right to authorize cities to collect taxes for city purposes, and had the right to limit the amount of such collection. At the time the levy in this case was made, the city did not have authority to make a levy in excess of ten mills. It did have authority to make that levy. It actually made a levy in excess of that amount. Under the rule above stated, it is plain that the legislature, by curative act, could ratify the excessive levy by the city, and that this ratification would not be the imposition of a tax by the state or by the legislature. We are of the opinion, therefore, that the validating act was a valid exercise of legislative authority, and that it validated the excessive tax imposed by the city."

Neither is *Board of State Tax Commissioners v.*

*Board of Assessors of Grand Rapids,* 124 Mich. 491, 83 N. W. 209, applicable. In that cause, it was contended that an act creating a board of state tax commissioners, and empowering that board to revise the assessments of property in townships and cities of the state, was unconstitutional as an invasion of the right of local self-government. In that case, there was no constitutional limitation of the power of the legislature, as in the cases at bar. The court said:

"It is insisted that the act is unconstitutional, for the reason that it interferes with local self-government in cities and townships. The particular provisions which are said to invade the right of local self-government are those empowering the State board to revise the assessment of property of an individual in any township or city in the State. It is conceded that, under the Constitution of 1835, the State legislature possessed all the legislative powers of the British parliament, and was not limited, either expressly or impliedly, in any such degree as is the legislature under the Constitution of 1850. We think it must be conceded that, in the absence of constitutional limitation, the State may, by its legislature, prescribe the limits of taxation and agencies to be employed."

*State Tax Commission v. Bailey & Howard,* 179 Ala. 620, 60 South. 913, is not in point. The court there refused to consider the question whether the statute authorizing a revision by the state board of assessments of county boards was an interference with the right of local self-government.

*Heidenway v. Harding,* 336 Ill. 606, 168 N. E. 630, is not in point, as it involves a statute which does not interfere with the right of local self-government. We note the Illinois reassessment statute does *not* empower the state tax commission to reassess the property within a county for local purposes. The state tax commission may, under the Illinois act, order that re-

assessment be made by the local assessment officers. The order may be for

" . . . all or any class of the taxable property in such county. The tax commission may order at any time and from time to time the board of review of any county not having an elective board of assessors and an elective board of review to convene in extraordinary session for the purpose of further revising, correcting and equalizing the assessment of property within such county."

The Illinois reassessment statute carefully preserves to the people of the county the right of local self-government. The act specifically provides that

". . . for the purpose of reviewing and equalizing such reassessment, the board of review of the county in which the reassessment is made shall review and correct such reassessment."

The reassessment is made by the local assessment officers, and the reassessment is subject to review by the local board of equalization, not by the state board of equalization.

*State ex rel. Seattle v. Carson,* 6 Wash. 250, 33 Pac. 428, upon which respondent relies, is distinguishable from the cases at bar. In that case, we held the legislature proceeded constitutionally in requiring that the tax collecting office of a municipality within a county be consolidated with the tax collecting office of the county. Manifestly, there was no deprivation of the right of local self-government by the consolidation of the two offices.

Respondent argues:

"Furthermore, this court has held that it is competent for the legislature to provide that railroad property shall be listed, assessed and valued for taxation purposes by state officers rather than by local assessors, although constitutional provisions relating to taxation provide no distinctions or exceptions for railroad property."

True, in the application of the unit system, we held in *Great Northern Ry. Co. v. Snohomish County,* 48 Wash. 478, 93 Pac. 924, and other cases, that the legislature may provide, without violating the constitution, for assessment of all the property of a railroad company used for railroad purposes, and apportioning it among the counties in proportion to the number of miles of track therein; that all property of the railroad company not used for strictly railroad purposes, or that which is incidental or accessory to the railroad, is assessable and taxable by the local authorities. The reason for the rule is tersely stated in *Ames v. People,* 26 Colo. 83, 56 Pac. 656, as follows:

"Uniformity and equality in all respects can never be exactly attained, and all that legislation has hitherto been able to accomplish, or perhaps ever will be able to achieve, is to approximate that end. This method of apportionment, in our judgment, gives to each local taxing district its just proportion of tax, that is to say, each taxing district gets for purposes of taxation the just valuation of the property physically situate within its territorial limits; for the value of property situate therein cannot be made to depend upon its so-called natural *situs,* entirely disassociated from the use made of it, but that value, in great measure, depends upon its connection with every other part of the corporation property so used, and situate in every other taxing district in which any part of its railroad lies, considered always in connection with the character of the use made of it."

In *Northern Pacific Ry. Co. v. State,* 84 Wash. 510, 147 Pac. 45, Ann. Cas. 1916E 1166, we held that the valuation of the operating property of a railway company for purposes of taxation by the state board of tax commissioners as an entirety, and the apportioning of such valuation to the several counties through which the line of such railway company runs, was a lawful method of valuing such property for purposes

of taxation; that the statute providing for such method was not violative of Art. 7, § 3, of our state constitution, reading as follows:

"The legislature shall provide by general law for the assessing and levying of taxes on all corporation property as near as may be by the same methods as are provided for the assessing and levying of taxes on individual property."

We said:

"The framers of this constitutional provision evidently recognized that it might be desirable, and even more conducive to the rule of uniformity prescribed by other sections of the constitution, that corporate property, by reason of the peculiar nature of much of such property, so far as the intangible elements entering into its value is concerned, be assessed by a method differing in some degree from that employed in the assessing of other property. We are of the opinion that the mere fact that the assessing of appellant's operating property as a unit by the state board of tax commissioners as prescribed by the law relating to assessment of railway operating property, instead of by the county assessors as other property is to be assessed under the general revenue laws, is not violative of this provision of the constitution; so long as such property is charged by the same rate of levy and its assessed value measured by the same standard as other property within the state."

In so far as it provides that the state tax commission may reassess for local taxation purposes property within a county, city, town, or other municipal corporation, chapter 106, Laws of 1931, is unconstitutional.

The causes are remanded, with direction to sustain the demurrer to each application for a writ of mandate and dismiss the actions.

MITCHELL, BEELER, BEALS, MAIN, HOLCOMB, and HERMAN, JJ., concur.

TOLMAN, C. J., concurs in the result.