**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILED
7/11/2022
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE CITY OF SEATTLE, | ) | No. 82248-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| FELICIA DANIELLE KOPPERDAHL, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — Felicia Danielle Kopperdahl appeals a trial court judgment and sentence ordering her to pay a $1,102.50 public safety education assessment (PSEA) on fines and fees that the trial court suspended or waived because she had no ability to pay. We reverse and remand for the trial court to vacate the PSEA.

FACTS

After her arrest on November 18, 2017, the city of Seattle (City) charged Kopperdahl in Seattle Municipal Court with being in actual physical control of a motor vehicle while under the influence of alcohol.[1] Kopperdahl pleaded guilty to the crime. She also admitted that she "refused to submit to a breath test." Because this was her third alcohol related driving offense within seven years, the

_____

[1] Under Seattle Municipal Code (SMC) 11.56.020(B)(1), it is a gross misdemeanor to be "in actual physical control of a motor vehicle while under the influence of intoxicating liquor, marijuana or any drug if the person has actual physical control of a vehicle within the City." SMC 11.56.020(B)(1) substantially mirrors RCW 46.61.504(1).

Citations and pin cites are based on the Westlaw online version of the cited material.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 82248-9-I/2

conviction called for "a fine of not less than $1,500[.00]."[2] RCW 46.64.055(1)

also compelled the court to order a $50.00 "criminal traffic fee." In all, the trial

court determined that applicable statutes provided for fines and fees totaling

$4,301.50.

Kopperdahl told the court she works part time as a restaurant server and

has no money left after paying rent. Kopperdahl also receives food stamps and

subsidized medical care through Apple Health.[3] From this, the trial court found

Kopperdahl indigent and waived the $4,301.50 in fines and fees. But the court

then imposed a PSEA of $1,050.00 (70 percent of the $1,500.00 fine) and $52.50

(105 percent of the $50.00 criminal traffic fee) because it had "assessed" that fine

and fee against Kopperdahl before waiving them due to her indigence. As a

result, the court waived "everything except for mandatory PSEAs" and ordered

Kopperdahl to pay a total PSEA of $1,102.50.

Kopperdahl appealed to the superior court. She argued the trial court

erred by imposing a PSEA because it applies to only fines and fees "assessed."

Kopperdahl reasoned that since the court waived all her fines and fees, the total

amount it "assessed" against her was "zero." The superior court rejected

Kopperdahl's argument. It agreed with the trial court that the PSEA applies to

the dollar amount first calculated by the court and "cannot be waived" even if the

judge subsequently waives the obligation to pay the underlying fines and fees.

---

[2] See SMC 11.56.025(C)(2); RCW 46.61.5055(3)(b)(ii).

[3] Washington State calls Medicaid "Apple Health."

2

No. 82248-9-I/3

A commissioner of our court granted Kopperdahl's request for discretionary review of the superior court's decision.

ANALYSIS

Kopperdahl argues that the trial court and then the superior court on appeal erred by ordering her to pay a PSEA on fines and fees the trial court waived and suspended due to her indigence. She contends that the plain language of RCW 3.62.090 supports her claim that the trial court did not "assess" any penalties against her. In the alternative, Kopperdahl argues that the PSEA is unconstitutionally excessive. The City argues that the superior court properly applied RCW 3.62.090 to the fines and fees ordered before it determined Kopperdahl was indigent.

RALJ 9.1 governs the superior court's appellate review of a municipal court decision. State v. Weber, 159 Wn. App. 779, 785, 247 P.3d 782 (2011). The superior court on appeal does not consider the evidence; it determines only whether there are any errors of law in the trial court's ruling. Id. at 786 (citing RALJ 9.1(a), (b)). We sit in the same position as the superior court and review the applicability of a legal financial obligation (LFO) de novo. Id.; State v. Smith, 9 Wn. App. 2d 122, 125-26, 442 P.3d 265 (2019). Statutory interpretation is also a question of law that we review de novo. State v. Van Noy, 3 Wn. App. 2d 494, 497, 416 P.3d 751 (2018).

When interpreting a statute, we first look to its plain language. State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). "A statute that is clear on its face is not subject to judicial construction." State v. J.M., 144 Wn.2d 472,

3

No. 82248-9-I/4

480, 28 P.3d 720 (2001).  Instead, we assume the legislature meant exactly what it said and apply the statute as written.  HomeStreet, Inc. v. Dep't of Revenue, 166 Wn.2d 444, 452, 210 P.3d 297 (2009) (citing Duke v. Boyd, 133 Wn.2d 80, 87, 942 P.2d 351 (1997)); see also Armendariz, 160 Wn.2d at 110 ("If the plain language of the statute is unambiguous, then [our] inquiry is at an end.").  We read statutes together whenever possible "to achieve a 'harmonious total statutory scheme . . . which maintains the integrity of the respective statutes.' " Employco Pers. Servs., Inc. v. City of Seattle, 117 Wn.2d 606, 614, 817 P.2d 1373 (1991)[4] (quoting State v. O'Neill, 103 Wn.2d 853, 862, 700 P.2d 711 (1985)).  We avoid a reading that produces absurd results because we presume the legislature does not intend them.  State v. Vela, 100 Wn.2d 636, 641, 673 P.2d 185 (1983).  We apply these same rules of statutory construction when interpreting municipal ordinances.[5]  City of Seattle v. Green, 51 Wn.2d 871, 874, 322 P.2d 842 (1958).

RCW 46.61.5055 outlines the penalty schedule for driving under the influence of alcohol and physical control offenses.  The statute calls for minimum fines depending on the number of such convictions in the prior seven years and the person's alcohol concentration.  RCW 46.61.5055(1)-(3).  Each provision states that the minimum penalty may not be suspended "unless the court finds the offender to be indigent."  RCW 46.61.5055(1)(a)(ii), 1(b)(ii), (2)(a)(ii), 2(b)(ii),

---

[4] Alteration in original.

[5] Kopperdahl's conviction fell under a city ordinance and the trial court applied the penalty provisions of the SMC.  But because the applicable SMC ordinances mirror the RCW, we refer to the state statutes for our analysis.

4

No. 82248-9-I/5

(3)(a)(ii), 3(b)(ii). RCW 46.64.055(1) also requires the offender pay a $50 criminal traffic fee for any violation of Title 46 RCW. Courts can waive the criminal traffic fee if the court finds that the offender is indigent. RCW 46.64.055(1).

In addition to Title 46 RCW financial obligations, RCW 3.62.090 requires courts of limited jurisdiction to impose a PSEA. The court calculates the PSEA as a percentage of the "assessed" fines or penalties. RCW 3.62.090(1), (2). RCW 3.62.090 provides, in relevant part:

> (1) There shall be assessed and collected in addition to any fines, forfeitures, or penalties assessed, other than for parking infractions, by all courts organized under Title 3 or 35 RCW a public safety and education assessment equal to seventy percent of such fines, forfeitures, or penalties, which shall be remitted as provided in chapters 3.46, 3.50, 3.62, and 35.20 RCW. The assessment required by this section shall not be suspended or waived by the court.
> (2) There shall be assessed and collected in addition to any fines, forfeitures, or penalties assessed, other than for parking infractions and for fines levied under RCW 46.61.5055, and in addition to the public safety and education assessment required under subsection (1) of this section, by all courts organized under Title 3 or 35 RCW, an additional public safety and education assessment equal to fifty percent of the public safety and education assessment required under subsection (1) of this section, which shall be remitted to the state treasurer and deposited as provided in RCW 43.08.250. The additional assessment required by this subsection shall not be suspended or waived by the court.

According to Kopperdahl, RCW 3.62.090 requires a court to impose a PSEA on only fines and penalties "assessed"—"fines the court ultimately required [her] to pay." We agree.

5

No. 82248-9-I/6

Title 3 RCW does not define "assessed." Without ambiguity or a statutory definition, we give the words in a statute their common and ordinary meaning. Garrison v. Nursing Bd., 87 Wn.2d 195, 196, 550 P.2d 7 (1976). To determine the ordinary meaning of an undefined statutory term, we may look to standard English language dictionaries. Boeing Co. v. Aetna Cas. & Sur. Co., 113 Wn.2d 869, 877, 784 P.2d 507 (1990). Webster's Third New International Dictionary 131 (2002) defines "assess" as "to determine the amount of and impose (as a tax, charge, or fine) according to an established rate or apportionment." And "impose" means "to cause to be burdened" or to "apply (as a charge, tax, obligation, rule, penalty) as compulsory, obligatory, or enforc[ea]ble." Id. at 1136. Applying these definitions, a court "assesses" a fine or penalty only where it both (1) determines an applicable amount and (2) burdens the defendant with an obligation to pay that amount.

Here, the trial court determined that a $1,500 fine and $50 criminal traffic fee would ordinarily attach to a third conviction for Kopperdahl's offense. But the court found Kopperdahl indigent and waived her obligation to pay the fine and fee. As a result, the court did not burden Kopperdahl with any financial obligation. Because the court assessed no fines or penalties, Kopperdahl owed no PSEA.

The City makes three arguments in support of its position that the term "assess" under RCW 3.62.090 refers to only the act of calculating the amount of a financial obligation. First, it argues that our Supreme Court determined in State v. Redd, 166 Wash. 132, 149, 6 P.2d 619 (1932), that the term "assess" is

6

commensurate with "valuation" and requires that the court only calculate a monetary value. But in Redd, the court considered the term in the context of assessing the value of real property for taxing purposes, not for determining LFOs after a criminal conviction. Id. at 134-35. We find the comparison unhelpful.

Next, the City argues that statutory construction supports its interpretation. It points to the statute's combined use of the terms "assessed and collected" when referring to the PSEA itself but only the single term "assessed" when referring to fines and fees subject to the PSEA.[6] When the legislature uses different words within the same statute, we assume it intends a different meeting. State v. Roggenkamp, 153 Wn.2d 614, 625, 106 P.3d 196 (2005). So the City argues that the legislature contemplated that the term "assess" does not include collection. The City's statutory interpretation is correct. But its argument misses the mark. The plain language of the statute provides that when the court has assessed—or determined and imposed—fines and fees it must then assess and collect—or determine, impose, and collect—a PSEA on those fines and fees. Applying the standard dictionary definition of "assess" gives meaning to every word in the statute and does not offend the rules of statutory construction.

Finally, the City argues the legislature must have intended to impose a PSEA on even indigent defendants because the purpose of the PSEA is to fund crime prevention and criminal justice programs, which are important government

---

[6] RCW 3.62.090(1), (2).

7

interests.[7]  According to the City, not collecting a PSEA from indigent defendants

"would reduce the funding available for these programs and would be contrary to

the legislative intent to provide a funding mechanism for these programs."  But

we interpret statutes in a manner that avoids unjust or absurd results.  And

interpreting the statute such that courts must add a PSEA to fines and fees

waived because of indigence is both unjust and an absurd result.[8]  Imposing a

PSEA on defendants who cannot pay does little to further the state's interest in

funding criminal justice programs.  We reject the City's contention that the

legislature intended to fund criminal justice programs by taxing indigent

defendants.[9]

---

[7] See FINAL BILL REPORT ON ENGROSSED SUBSTITUTE S.B. 6023, at 1, 58th Leg., Reg. Sess. (Wash. 2003) ("The state PSEA is currently used to fund crime prevention and criminal justice-related programs.").

[8] Indeed, in recent years, the legislature has recognized that the "burden of large LFOs limits the ability of offenders to reenter the workforce and reach stability or prosperity."  See H.B. REP. ON ENGROSSED SECOND SUBSTITUTE H.B 1783, at 6, 65th Leg., Reg. Sess. (Wash. 2018). Legislative intent shifted to "a more rational standard for determining ability to pay."  Id.  ("We want offenders to rebuild their lives once they are released from prison.").  The legislature also noted that "[t]he criminal justice system was never meant to be self-financed."  Id.  As a result, it began amending LFO statutes to provide relief to indigent defendants, such as waiving interest on nonrestitution LFOs.  See LAWS OF 2018, ch. 269.

[9] The City also suggests that the last sentences of RCW 3.62.090(1) and (2) that state the "assessment required by this section shall not be suspended or waived by the court" mean that "[e]ven if the fine or penalty are not [imposed], the PSEA must still be assessed and collected."  We also reject this argument.  Read in context, the sentences prohibit the court from suspending or waiving a PSEA once the PSEA itself is determined and imposed.

No. 82248-9-I/9

We conclude that the plain language of RCW 3.62.090 imposes a PSEA

on only the fines and fees a court ultimately obligates a defendant to pay.  We

reverse and remand to vacate the PSEA.[10]

_Bremm, J_

WE CONCUR:

---

[10] Because a plain reading of RCW 3.62.090 shows that Kopperdahl was not subject to a PSEA, we do not reach her contention that the PSEA amounted to an excessive fine and violated her right to equal protection.